938 A.2d 198

**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**Joseph Henry Paul DAVIDSON, Appellant.**

Supreme Court of Pennsylvania.

Argued Oct. 19, 2005.

Decided Nov. 20, 2007.

2

4

W. Wayne Punshon, Esq., Elwyn, for Joseph Henry Paul Davidson.

George Michael Green, Esq., Andrew S. Kovach, Esq., Media, for Commonwealth of Pennsylvania.

BEFORE: CAPPY, C.J., and CASTILLE, NIGRO, NEWMAN, SAYLOR, EAKIN and BAER, JJ.

## OPINION

Justice CASTILLE.

In the case *sub judice,* we are asked to decide whether Section 6312(d) of the statute governing possession of child pornography, 18 Pa.C.S. § 6312(d), is unconstitutionally vague and/or overbroad. Additionally before this Court are the following questions: (1) Did the General Assembly intend that a person charged under Section 6312(d) be subjected to individual counts for each item of child pornography possessed? and (2) If the General Assembly so intended, is it constitutional to impose separate punishments for each conviction? For the following reasons, we hold that Section 6312(d) is not unconstitutionally vague or overbroad. Furthermore, we find that the General Assembly did intend that a person charged under Section 6312(d) may be subjected to individual counts and sentences for each item of child pornography possessed, and that the General Assembly's intention in this regard is constitutional. Accordingly, we affirm the Superior Court.

In 2000, the Delaware County District Attorney's Office, Criminal Investigation Division ("CID"), established the Internet Crime Against Children Taskforce ("Taskforce") funded via a federal grant received through the Office of Juvenile Justice and Delinquency Prevention to investigate Internet crimes, including child exploitation over the Internet. Lieutenant David C. Peifer of the CID, a 26–year police veteran, supervised the Taskforce. In the Fall of 1999, Lt. Peifer was involved in a joint federal and local initiative started by the

Dallas, Texas Police Department and the United States Postal Inspection Service, labeled Operation Avalanche. Operation Avalanche was an investigation into Landslide Incorporated ("Landslide"), a company that supplied child pornography for web access over the Internet. For a $29.95 fee, paid via credit card, an individual would gain access to Landslide's Internet site for a 30–day period to view child pornography. Landslide's Internet site was eventually shutdown and its records were seized by the United States Postal Inspection Service, the Federal Bureau of Investigation, and the Dallas Police Department. Law enforcement recovered the database of customer records as a result of the seizure, constituting a list totaling over 35,000 names throughout the United States. The Dallas Police Department and the United States Postal Inspection Service then distributed the list to various task-forces and agencies throughout the United States for further investigation of individuals who purchased child pornography.

Lt. Peifer received a list of 1,398 individuals with addresses in Pennsylvania from Landslide's seized database of customer records. Appellant Joseph Henry Paul Davidson's name, address and credit card number appeared on this list. On October 17, 2001, Lt. Peifer and Detective William Henderson of the Ridley Township Police Department proceeded to the Ridley Township, Delaware County address provided for appellant in Landslide's customer records. Lt. Peifer identified himself and explained to appellant that they were there concerning an investigation into the purchase of child pornography over the Internet. After asking appellant if there was a more private place to continue their discussion, appellant took Lt. Peifer and Det. Henderson to his bedroom, where appellant's computer was located.

Lt. Peifer then informed appellant that his name appeared on Landslide's database of customer records as a person who had purchased child pornography. Appellant indicated that he did not remember any such purchase. Lt. Peifer next asked appellant if he would voluntarily consent to a search of his computer's hard drive to see if it contained child pornography, explaining that appellant was not required to consent to

such a search and could refuse to consent, or could stop the search at any time once it began. Appellant agreed to the search and signed a consent form to that effect.

Lt. Peifer then inserted a disk into appellant's computer that contained a "pre-search" program that scans a computer's hard drive for images, pictures or graphics. While performing the scan, Lt. Peifer observed images that he believed to be child pornography. Lt. Peifer then stopped the search and informed appellant that, based on the images he had viewed, appellant's computer would be seized and a search warrant would be obtained. Lt. Peifer asked appellant if others had access to the computer, and appellant explained that he owned the computer, that he was the only person with access to the computer and anything on the computer was put there by him. Lt. Peifer turned the computer off and disconnected the cables. While doing so, Lt. Peifer came across a separate hard drive sitting on top of the computer. Lt. Peifer asked about the hard drive, and appellant stated that he did not know what was on the hard drive, but that Lt. Peifer was free to take it. Lt. Peifer then explained to appellant that his computer would be examined by a forensic examiner and that he would be charged with respect to any images of child pornography that appeared on his computer.

At the end of October 2001, Lt. Peifer obtained a search warrant and transferred the computer to Agent William Applegate, a computer forensic examiner for the Pennsylvania Attorney General's Office. On January 27, 2002, Lt. Peifer received Agent Applegate's report, which indicated that there were in excess of 1,300 images of child pornography in both video format and still photographs located on appellant's computer. Agent Applegate's report indicated that several of the photographs matched a National Center for Missing and Exploited Children database as known child pornography. Consequently, on February 6, 2002, appellant was arrested and charged with 500 counts of Sexual Abuse of Children in violation of 18 Pa.C.S. § 6312(d).[1]

---

1. Section 6312(d) provides that it is illegal for an individual to knowingly possess "any book, magazine, pamphlet, slide, photograph, film,

A non-jury trial was held before the Honorable Joseph P. Cronin on November 13 and 14, 2002, wherein appellant was convicted of 28 counts of Sexual Abuse of Children under Section 6312(d).[2] On February 25, 2003, the court sentenced appellant, on each of the 28 counts, to a term of confinement of not less than one year less one day, nor more than two years less one day, with the sentences to run concurrently, and a five-year term of probation.[3] The court also ordered appellant to: undergo a psychosexual evaluation; be supervised by the Sexual Abuse Unit after obtaining parole and during probation and to comply with all of its recommendations; forfeit his computer hard drives and monitor; register with the Pennsylvania State Police for ten years; and provide a DNA sample prior to his release.

Following sentencing, appellant filed a Motion for Extraordinary Relief pursuant to Pa.R.Crim.P. 704 and a motion challenging the sufficiency and weight of the evidence, which were denied by the trial court. On March 11, 2003, appellant filed a Notice of Appeal, and the trial court directed appellant to file a Concise Statement of Matters Complained of on Appeal pursuant to Pa.R.A.P.1925(b). The trial court then issued its opinion pursuant to Pa.R.A.P.1925(a) on December 30, 2003.

The trial court first found that the verdict was not against the weight of the evidence and that the verdict was legally sufficient. Further, the court held that the definition of "prohibited sexual act" in 18 Pa.C.S. § 6312(a) ("sexual intercourse ..., masturbation, sadism, masochism, bestiality, fellatio, cunnilingus, lewd exhibition of the genitals or nudity ...") was satisfied because "at least [ ] 28 ... of the pornographic

videotape, computer depiction or other material depicting a child under the age of 18 years engaging in a prohibited sexual act or in the simulation of such act[.]" 18 Pa.C.S. § 6312(d).

**2.** The Commonwealth elected to pursue only 50 counts of Sexual Abuse of Children against appellant at trial.

**3.** A conviction under Section 6312(d) is a felony of the third degree which is punishable by up to seven years in prison. 18 Pa.C.S. § 1103(3). The individual and aggregate sentences here, thus, were all below the statutory maximum.

images stored within [a]ppellant['s][ ] computer depicted children engaged in vaginal intercourse, anal intercourse, oral sex, performing sex acts, or in various stages of undress or . . . in sexually provocative poses." Trial Ct. Op. at 13. The trial court also found that the same 28 images "were copied and archived" in appellant's computer, indicating that someone knew of the existence of these images and saved the images for future viewing. *Id.* at 14. The trial court determined, beyond a reasonable doubt, that appellant was that individual. *Id.*

Appellant also challenged the constitutionality of Section 6312(a)'s qualifier to the term "nudity" on the grounds that it was both vague and overbroad. The court found that the term "nudity" is not vague as it is "precisely defined, in that it attaches as a condition of criminality, the fact that the nudity must be depicted for the purpose of sexual stimulation or gratification of any person who might view such depiction." Trial Ct. Op. at 15–16. The court explained that viewing pictures of nude children for sexual gratification is a criminal act. Furthermore, the court held that Section 6312(d) is not overbroad, finding that viewing nude children for sexual stimulation or gratification "grossly offends what society deems to be acceptable behavior[,]" and prohibiting the same does not offend constitutionally protected activity. *Id.* at 16.

Additionally, the court rejected appellant's challenge to his sentence. Specifically, appellant had charged that the trial court erred in "sentencing [a]ppellant to consecutive sentences in a case where [appellant] was charged with multiple counts of a possessory crime inasmuch as, for sentencing purposes, the counts merge." Concise Statement of Matters Complained of on Appeal at 3. The court found that it had explained appellant's sentence in great detail and provided numerous well-founded reasons for its sentence on the record before sentencing. Further, the court noted it ordered appellant's sentences to run concurrently, not consecutively.

On appeal to the Superior Court, the panel affirmed appellant's judgment of sentence. *Commonwealth v. Davidson*, 860 A.2d 575 (Pa.Super.2004). The court found that the evidence

was sufficient to prove appellant guilty beyond a reasonable doubt and that the verdict was not against the weight of the evidence. Additionally the court held that Section 6312(d) is not unconstitutionally vague or overbroad. The court found that the term "nudity" under Section 6312(a) is "defined precisely enough to avoid a challenge for vagueness under the state and federal constitutions." *Davidson,* 860 A.2d at 583. The court reasoned that there is nothing vague about the definition which provides that possessing a depiction of a nude child under the age of 18 is a crime only when it is for the purposes of sexual stimulation or gratification and that ordinary people will understand what conduct is prohibited. As to appellant's overbreadth charges, the court agreed with the trial court that, rather than punishing a substantial amount of constitutionally protected activity, Section 6312(d) prohibits conduct that "grossly offends" acceptable behavior within society. *Davidson,* 860 A.2d at 579–83 (quoting Trial Ct. Op. at 16).

The Superior Court also rejected appellant's claim that the court improperly imposed multiple sentences for a single possessory offense, and thus, violated his constitutional right against double jeopardy. The court found that appellant misinterpreted this Court's Opinion Announcing the Judgment of the Court ("OAJC") in *Commonwealth v. Gatling,* 570 Pa. 34, 807 A.2d 890 (2002), and noted that the *Gatling* OAJC found that a merger analysis is not required if the offenses stem from different criminal acts. *Davidson,* 860 A.2d at 583 (citing *Gatling,* 807 A.2d at 899). Thus, under *Gatling,* the court explained that it did not reach the question of merger because the offenses charged stemmed from different criminal acts. *Davidson,* 860 A.2d at 583. Specifically, the court explained that there were 28 pornographic pictures featuring children under the age of eighteen, and that "[e]ach photograph of each child victimized that child and subjected him or her to precisely the type of harm the statute seeks to prevent." *Id.* Furthermore, the court noted that if it were to apply the merger doctrine here, appellant would receive a

"volume discount" on his multiple crimes. *Id.* (quoting *Commonwealth v. Anderson,* 538 Pa. 574, 650 A.2d 20, 22 (1994)).

■ This Court granted further review. All issues presented for our review are questions of law. Thus, our scope of review is plenary and our standard of review is *de novo.* *See Burger v. Sch. Bd. of McGuffey Sch. Dist.,* 592 Pa. 194, 923 A.2d 1155, 1160 (2007); *Alliance Home v. Bd. of Assessment Appeals,* 591 Pa. 436, 919 A.2d 206, 214 (2007).

## I.   Constitutionality of Section 6312(d)

Before this Court, appellant argues that Section 6312(d) is unconstitutionally vague and overbroad insofar as it makes the possession of depictions of child nudity illegal "if such nudity is depicted for the purpose of sexual stimulation or gratification" of any viewer. *See* 18 Pa.C.S. § 6312(a). Appellant avers that the void-for-vagueness doctrine, Article I, Section 9 of the Pennsylvania Constitution [4] and the Due Process Clause of the Fourteenth Amendment of the United States Constitution, all focus on clear and understandable notice to citizens as to what conduct is prohibited by a statute, and on the fair, non-arbitrary enforcement of a statute. Appellant maintains that Section 6312(d) fails to define the criminal offense with sufficient definiteness, rendering ordinary people unable to understand what conduct is prohibited, and encouraging arbitrary and discriminatory enforcement. Accordingly, appellant asserts that Section 6312(d) is void due to its vagueness.

---

4.   Article I, Section 9 provides:

In all criminal prosecutions the accused hath a right to be heard by himself and his counsel, to demand the nature and cause of the accusation against him, to be confronted with the witnesses against him, to have compulsory process for obtaining witnesses in his favor, and, in prosecutions by indictment or information, a speedy public trial by an impartial jury of the vicinage; he cannot be compelled to give evidence against himself, nor can he be deprived of his life, liberty or property, unless by the judgment of his peers or the law of the land. The use of a suppressed voluntary admission or voluntary confession to impeach the credibility of a person may be permitted and shall not be construed as compelling a person to give evidence against himself.

PA. CONST. art. I, § 9.

Appellant contends that the statutory qualifier to the term "nudity" in Section 6312(a) creates a standard that is completely subjective, requiring a person to guess at its meaning. Appellant argues that Section 6312(d) identifies three possible actors involved in the offense—the possessor, the depicter and any potential viewer. Appellant contends that one interpretation would punish the possessor if it was the purpose of the depicter to offer sexual stimulation or gratification to any potential viewer, and another interpretation would rest criminality on any viewer's reaction.

Further, appellant posits that the vagueness problem lies in determining which depictions of nude minors, not engaged in the statutorily specified sexual activity, qualify as "prohibited sexual acts." Appellant asserts that the "any person" language in the Section 6312(a) "nudity" qualifier allows for arbitrary and discriminatory enforcement. Thus, appellant argues that due to the absence of any objective criteria in the definition of "nudity," while some pictures of a nude minor in a family or artistic setting are clearly not pornographic, they might provide sexual stimulation or gratification to a pedophile. Appellant consequently maintains that this fact would allow a subjective and potentially deviant viewpoint to control what constitutes child pornography under Section 6312. Moreover, appellant contends that a parent or an artist could be exposed to arrest for an otherwise innocent photograph if a police officer believed that the image was being depicted for sexual stimulation or gratification, thus inviting charges on a subjective basis. Accordingly, appellant maintains that, under Section 6312(d), an individual theoretically could be charged with and convicted for possessing images containing child nudity that are not possessed for the purpose of sexual stimulation or gratification.

Appellant also contends that Section 6312(f) is vague because it states only that the "section does not apply to any material that is possessed, controlled, brought or caused to be brought into this Commonwealth, or presented for a bona fide educational, scientific, governmental or judicial purpose." 18 Pa.C.S. § 6312(f). Appellant notes that the statute does not

exclude materials for artistic, family or commercial purposes. This, appellant avers, leaves individuals to speculate as to the meaning of Section 6312(d).

Additionally, appellant argues that Section 6312(d) is overbroad because it punishes a substantial amount of conduct protected by the First Amendment of the United States Constitution and Article I, Section 7 of the Pennsylvania Constitution.[5] Appellant asserts that Section 6312(d) makes nudity, without more, the test for defining child pornography in violation of *New York v. Ferber*, 458 U.S. 747, 765 n. 18, 102 S.Ct. 3348, 3359 n. 18, 73 L.Ed.2d 1113 (1982). Appellant claims that the "nudity" qualifier in Section 6312(a) lacks any objective language limiting its prohibited depictions of nudity and establishes a subjective test. Appellant further charges that, under the "nudity" qualifier, child pornography becomes a strict liability crime negatively affecting individuals with a legitimate purpose, such as an artist, photographer, bookseller or advertiser. Appellant contends that these individuals cannot safely create or possess nude images of minors that do not implicate the Commonwealth's interest in eradicating child pornography and protecting minors from sexual abuse. Appellant maintains that due to the language used, "the pedophilic gaze becomes central to the determination." Appellant's Brief at 23.

The Commonwealth counters, first, that Section 6312(d) is not unconstitutionally vague or overbroad because a person of

5. Article I, Section 7 of the Pennsylvania Constitution provides:
   The printing press shall be free to every person who may undertake to examine the proceedings of the Legislature or any branch of government, and no law shall ever be made to restrain the right thereof. The free communication of thoughts and opinions is one of the invaluable rights of man, and every citizen may freely speak, write and print on any subject, being responsible for the abuse of that liberty. No conviction shall be had in any prosecution for the publication of papers relating to the official conduct of officers or men in public capacity, or to any other matter proper for public investigation or information, where the fact that such publication was not maliciously or negligently made shall be established to the satisfaction of the jury; and in all indictments for libels the jury shall have the right to determine the law and the facts, under the direction of the court, as in other cases.
   PA. CONST. art. I, § 7.

ordinary intelligence can understand what conduct is prohibited. Further, the Commonwealth maintains that the inclusion of Section 6312(f) prevents arbitrary and discriminatory enforcement, and ensures that the statute does not encroach on a substantial amount of constitutionally protected conduct. The Commonwealth asserts that Section 6312(d) serves to further a compelling state interest, to wit, protecting children by eradicating the production and supply of child pornography, thus preventing the abuse and exploitation of children.

As to vagueness, the Commonwealth argues that the plain language of the statute; the circumstances surrounding the acquisition and possession of the images of nude minors; and "an examination of the content, focus and background of the depiction create [ ] an objective standard, allowing reasonable persons to know which depictions are prohibited by [Section] 6312." Commonwealth's Brief at 12. Thus, the Commonwealth posits as an example that photos of an infant in a bathtub taken by the child's parents and disseminated to others objectively would not fall under the purview of Section 6312(d) because the images were not depicted for the purpose of sexual stimulation or gratification of the viewer.

The Commonwealth further contends that it must only prove knowing possession of materials depicting nude minors and that those materials were depicted for the purpose of sexual stimulation or gratification. The Commonwealth argues that, under the statute, it is the depicter's purpose, and not the viewer's, which is determinative. Thus, the Commonwealth maintains that the "any person" language makes clear that the Commonwealth is not required to prove that a defendant was himself sexually aroused by the image.

The Commonwealth also maintains that Section 6312(d) is not violative of *Ferber*, 458 U.S. 747, 102 S.Ct. 3348, 73 L.Ed.2d 1113, because it clearly and precisely defines what conduct is prohibited. The Commonwealth adds that the category of prohibited sexual conduct is adequately described in Section 6312(a) and is suitably limited. The Commonwealth argues that appellant is incorrect in his assertion that a violation of Section 6312(d) requires only a simple depiction of

a nude minor. To the contrary, Section 6312(d) ensures that innocent depictions of nude minors do not fall under the statute because Section 6312(a) requires that the nudity be depicted for the purpose of sexual stimulation or gratification—an additional requirement that must be proven. Further, under Section 6312(f), the Commonwealth notes that materials with an educational, scientific, governmental or judicial purpose are specifically excluded from coverage under Section 6312(d).

As to appellant's overbreadth claim, the Commonwealth rebuts that child pornography falls outside the scope of the First Amendment and Article I, Section 7, and thus, it is not considered protected speech or conduct and that Section 6312(d)'s prohibition against the depiction and possession of child pornography therefore is lawful. Accordingly, the Commonwealth asserts that Section 6312(d) is not overbroad because it clearly does not impinge on a substantial amount of constitutionally protected activity.

In his reply brief, appellant claims that the Commonwealth's arguments confirm the subjectivity and vagueness of the language of Section 6312(a). Appellant charges that Section 6312(d) criminalizes the possession of nude images of minors if the distribution was intended, by the depicter, for sexual stimulation or gratification. This focus on the subjective intent of the depicter, appellant argues, fails to meet the due process requirement of notice. Appellant reasons that whereas the depicter has notice and knows whether his purpose in creating an image will run afoul of the statute, a mere possessor or viewer has no notice of the depicter's intent and is therefore "held to an unconstitutional vicarious standard of criminal liability." Appellant's Reply Brief at 2. In any event, appellant maintains that a jury must still assess a possessor's guilt through a determination of the depicter's intent, thus making Section 6312(d) vague, overbroad and violative of the Due Process Clause notice requirements.

At the time of appellant's arrest, Section 6312, governing the sexual abuse of children, provided in relevant part:

(a) Definition.—As used in this section, "prohibited sexual act" means sexual intercourse as defined in section 3101 (relating to definitions), masturbation, sadism, masochism, bestiality, fellatio, cunnilingus, lewd exhibition of the genitals or nudity if such nudity is depicted for the purpose of sexual stimulation or gratification of any person who might view such depiction.

\* \* \* \* \* \*

(d) Possession of child pornography.—Any person who knowingly possesses or controls any book, magazine, pamphlet, slide, photograph, film, videotape, computer depiction or other material depicting a child under the age of 18 years engaging in a prohibited sexual act or in the simulation of such act is guilty of a felony of the third degree.

\* \* \* \* \* \*

(f) Exceptions.—This section does not apply to any material that is possessed, controlled, brought or caused to be brought into this Commonwealth, or presented for a bona fide educational, scientific, governmental or judicial purpose.

18 Pa.C.S. § 6312.[6] There is, of course, a presumption "[t]hat the General Assembly does not intend to violate the Constitution of the United States or of this Commonwealth" when promulgating legislation. 1 Pa.C.S. § 1922(3). As such, duly

---

**6.** The General Assembly amended Section 6312 following appellant's arrest. *See* Act of November 20, 2002, P.L. 1104, No. 134, § 1, effective January 21, 2003. Subsections (a) and (f) were not altered by the amendments. The amendments to Subsection (d) are reflected below:

(d) Possession of child pornography.—

(1) Any person who knowingly possesses or controls any book, magazine, pamphlet, slide, photograph, film, videotape, computer depiction or other material depicting a child under the age of 18 years engaging in a prohibited sexual act or in the simulation of such act commits an offense.

(2) A first offense under this subsection is a felony of the third degree, and a second or subsequent offense under this subsection is a felony of the second degree.

The General Assembly's amendments do not affect the issues presented for our review.

enacted legislation is presumed valid and unless it clearly, palpably and plainly violates the Constitution, it will not be declared unconstitutional. *See Pa. Tpk. Comm'n v. Commonwealth,* 587 Pa. 347, 899 A.2d 1085, 1094 (2006); *Commonwealth v. Mockaitis,* 575 Pa. 5, 834 A.2d 488, 497 (2003). Accordingly, the party challenging the constitutionality of a statute bears a heavy burden of persuasion. *See Burger v. Sch. Bd. of McGuffey Sch. Dist.,* 592 Pa. 194, 923 A.2d 1155, 1160 (2007); *Harrisburg Sch. Dist. v. Zogby,* 574 Pa. 121, 828 A.2d 1079, 1087 (2003).

Under the void-for-vagueness standard, a statute will only be found unconstitutional if the statute is "so vague that persons of common intelligence must necessarily guess at its meaning and differ as to its application." *Commonwealth v. Cotto,* 562 Pa. 32, 753 A.2d 217, 220 (2000) (quotations omitted); *see also Commonwealth v. Mayfield,* 574 Pa. 460, 832 A.2d 418, 422 (2003). However, a statute will pass a vagueness constitutional challenge if the statute "define[s] the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." *Kolender v. Lawson,* 461 U.S. 352, 357, 103 S.Ct. 1855, 1858, 75 L.Ed.2d 903 (1983); *Commonwealth v. Bullock,* 590 Pa. 480, 913 A.2d 207, 212 (2006). Due process requires that a criminal statute give fair warning of the conduct it criminalizes. *See Commonwealth v. Magliocco,* 584 Pa. 244, 883 A.2d 479, 487 (2005) (citing *Rogers v. Tennessee,* 532 U.S. 451, 457, 121 S.Ct. 1693, 1698, 149 L.Ed.2d 697 (2001); *United States v. Harriss,* 347 U.S. 612, 618, 74 S.Ct. 808, 812, 98 L.Ed. 989 (1954)); *see also Commonwealth v. Noel,* 579 Pa. 546, 857 A.2d 1283, 1285 (2004). Furthermore, even if the General Assembly could have chosen " 'clearer and more precise language' equally capable of achieving the end which it sought does not mean that the statute which it in fact drafted is unconstitutionally vague." *United States v. Powell,* 423 U.S. 87, 94, 96 S.Ct. 316, 321, 46 L.Ed.2d 228 (1975) (quoting *United States v. Petrillo,* 332 U.S. 1, 7, 67 S.Ct. 1538,

1541, 91 L.Ed. 1877 (1947)); *Commonwealth v. Packer*, 568 Pa. 481, 798 A.2d 192, 200 (2002).

A challenge to the constitutionality of a statute under the "overbreadth" doctrine is generally limited to the First Amendment. *United States v. Salerno*, 481 U.S. 739, 745, 107 S.Ct. 2095, 2100, 95 L.Ed.2d 697 (1987); *Bullock*, 913 A.2d at 214. The United States Supreme Court has explained that the traditional rules of standing have been altered to:

> [p]ermit—in the First Amendment area-"attacks on overly broad statutes with no requirement that the person making the attack demonstrate that his own conduct could not be regulated by a statute drawn with the requisite narrow specificity." *Dombrowski v. Pfister*, [380 U.S. 479, 486, 85 S.Ct. 1116, 1121, 14 L.Ed.2d 22 (1965)]. Litigants, therefore, are permitted to challenge a statute not because their own rights of free expression are violated, but because of a judicial prediction or assumption that the statute's very existence may cause others not before the court to refrain from constitutionally protected speech or expression.

*Broadrick v. Oklahoma*, 413 U.S. 601, 612, 93 S.Ct. 2908, 2916, 37 L.Ed.2d 830 (1973). The Constitution provides "significant protection from overbroad laws that chill speech within the First Amendment's vast and privileged sphere." *Ashcroft v. Free Speech Coalition*, 535 U.S. 234, 244, 122 S.Ct. 1389, 1399, 152 L.Ed.2d 403 (2002).

A statute is unconstitutionally overbroad only if it punishes lawful "constitutionally protected activity as well as illegal activity." *Commonwealth v. Barud*, 545 Pa. 297, 681 A.2d 162, 165 (1996); *see also Commonwealth v. Craven*, 572 Pa. 431, 817 A.2d 451, 454 (2003). Thus, in determining whether a statute is unconstitutional due to overbreadth, a "court's first task is to determine whether the enactment reaches a substantial amount of constitutionally protected conduct." *Commonwealth v. Ickes*, 582 Pa. 561, 873 A.2d 698, 702 (2005) (quoting *Vill. of Hoffman Estates v. Flipside, Hoffman Estates Inc.*, 455 U.S. 489, 494, 102 S.Ct. 1186, 1191, 71 L.Ed.2d 362 (1982)). The "overbreadth of a statute must

not only be real, but substantial as well, judged in relation to the statute's plainly legitimate sweep." *Broadrick,* 413 U.S. at 615, 93 S.Ct. at 2918. Consequently, if a statute's overbreadth is substantial, "it may not be enforced against anyone until it is narrowed to reach only unprotected activity." *Mayfield,* 832 A.2d at 425 (quoting *Commonwealth v. Hendrickson,* 555 Pa. 277, 724 A.2d 315, 317–18 (1999)).

This Court has explained that the:

function of overbreadth adjudication . . . attenuates as the prohibited behavior moves from pure speech towards conduct, where the conduct falls within the scope of otherwise valid criminal laws that reflect legitimate state interests. . . . [Further,] while such laws may implicate protected speech, at some point that potential effect does not justify invalidating a statute prohibiting conduct that a state has the power to proscribe.

*Hendrickson,* 724 A.2d at 318 (citing *Broadrick,* 413 U.S. at 615, 93 S.Ct. at 2917). Notably, the United States Supreme Court has described application of the overbreadth doctrine as "strong medicine" which is "employed sparingly and only as a last resort." *Broadrick,* 413 U.S. at 613, 93 S.Ct. at 2916.

With particular respect to child pornography, the U.S. Supreme Court has considered constitutional challenges to statutes which proscribe the promotion, distribution and/or possession of child pornography. In *New York v. Ferber,* 458 U.S. 747, 102 S.Ct. 3348, 73 L.Ed.2d 1113, the Court considered a New York criminal statute that prohibited promoting sexual performances by minors via distribution of materials depicting such activity. The Court held that child pornography is not entitled to the protection of the First Amendment so long as the conduct to be prohibited is "adequately defined by the applicable state law, as written or authoritatively construed." *Id.* at 764, 102 S.Ct. at 3358.

In *Ferber,* the Court recognized that the exploitation of children through the production of child pornography is a significant national problem, which causes the children who are subjects of pornographic materials to suffer psychological,

emotional and mental harm. *Id.* at 758, 102 S.Ct. at 3355; *see also Osborne v. Ohio,* 495 U.S. 103, 109, 110 S.Ct. 1691, 1696, 109 L.Ed.2d 98 (1990). Thus, the States "are entitled to greater leeway in the regulation of pornographic depictions of children." *Ferber,* 458 U.S. at 756, 102 S.Ct. at 3354. The *Ferber* Court identified five reasons to explain the latitude afforded to the States.

The Court first stated that a "State's interest in safeguarding the physical and psychological well-being of a minor is compelling." *Id.* (quotations omitted). The Court further noted that the "prevention of sexual exploitation and abuse of children constitutes a government objective of surpassing importance." *Id.* at 756, 102 S.Ct. at 3355.

Second, the Court noted that the distribution of child pornography is "intrinsically related to the sexual abuse of children" because the "materials produced are a permanent record of the children's participation and the harm to the child is exacerbated by their circulation." *Id.* at 759, 102 S.Ct. at 3355; *see also Free Speech Coalition,* 535 U.S. at 249, 122 S.Ct. at 1401; *Osborne,* 495 U.S. at 111, 110 S.Ct. at 1697.

Third, the Court noted that the advertising and selling of child pornography are integral to its production because it provides an economic motive for perpetuation of child pornography. The Court reasoned that if enforceable production laws were in effect, there would be no child pornography to market. *Ferber,* 458 U.S. at 761–62, 102 S.Ct. at 3357; *see also Osborne,* 495 U.S. at 110, 110 S.Ct. at 1696.

Fourth, the Court found that the value of videos or photographs of minors involved in lewd sexual conduct had "exceedingly modest, if not *de minimis*" value. *Ferber,* 458 U.S. at 762, 102 S.Ct. at 3357. The Court noted that it was "unlikely that visual depictions of children performing sexual acts or lewdly exhibiting their genitals would often constitute an important and necessary part of a literary performance or scientific or educational work." *Id.* at 762–63, 102 S.Ct. at 3357.

Lastly, the Court held that not affording child pornography the protection of the First Amendment was compatible with Supreme Court precedent. The Court found that because the New York statute in question "bears so heavily and pervasively on the welfare of children engaged in its production, we think the balance of competing interests is clearly struck and that it is permissible to consider these materials as without the protection of the First Amendment." *Id.* at 764, 102 S.Ct. at 3358.

The *Ferber* Court differentiated its holding from *Miller v. California,* 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419 (1973) (obscene material is unprotected by the First Amendment),[7] in the following fashion:

> The *Miller* standard, like all general definitions of what may be banned as obscene, does not reflect the State's particular and more compelling interest in prosecuting those who promote the sexual exploitation of children. Thus, the question under the *Miller* test of whether a work, taken as a whole, appeals to the prurient interest of the average person bears no connection to the issue of whether a child has been physically or psychologically harmed in the production of the work. Similarly, a sexually explicit depiction need not be "patently offensive" in order to have required the sexual exploitation of a child for its production. In addition, a work which, taken on the whole, contains serious literary, artistic, political, or scientific value may nevertheless embody the hardest core of child pornography.... We therefore cannot conclude that the *Miller* standard is a satisfactory solution to the child pornography problem.

*Ferber,* 458 U.S. at 761, 102 S.Ct. at 3356–57. The Court also clarified that the *Ferber* test is distinct from the *Miller*

7. In *Miller,* the Court explained that to determine whether a work is obscene, "[t]he basic guidelines for the trier of fact must be: (a) whether the average person, applying contemporary community standards would find that the work, taken as a whole, appeals to the prurient interest; (b) whether the work depicts or describes, in a patently offensive way, sexual conduct specifically defined by the applicable state law; and (c) whether the work, taken as a whole, lacks serious literary, artistic, political, or scientific value." *Miller,* 413 U.S. at 23–24, 93 S.Ct. at 2614–2615 (citations and quotations omitted).

obscenity standard as follows: "A trier of fact need not find that the material appeals to the prurient interest of the average person; it is not required that sexual conduct portrayed be done so in a patently offensive manner; and the material at issue need not be considered as a whole." *Id.* at 764, 102 S.Ct. at 3358. Thus, under *Ferber,* child pornography may be prohibited whether or not the images would be considered obscene under the *Miller* standard.

In *Osborne,* the U.S. Supreme Court held that Ohio's statute proscribing the possession and viewing of child pornography was constitutional under the First Amendment. The Court found that it is "reasonable for [a] State to conclude that it will decrease the production of child pornography if it penalizes those who possess and view the product, thereby decreasing demand." *Osborne,* 495 U.S. at 109–110, 110 S.Ct. at 1696.

The Court also explained that, following the *Ferber* decision, much of the child pornography market was driven underground making it "difficult, if not impossible, to solve the child pornography problem by only attacking production and distribution." *Id.* at 110, 110 S.Ct. at 1697. Consequently, numerous states found it necessary to proscribe the simple possession of child pornography as a way to "stamp out this vice at all levels in the distribution chain." *Id.*[8] Thus, the *Osborne*

8. At the time of the *Osborne* decision in 1990, 19 States had statutes proscribing possession of child pornography. As of 2007, the United States Congress and the legislative bodies of all 50 States have promulgated statutes which prohibit the possession of child pornography, thus comparable to the statute at issue in the case *sub judice,* 18 Pa.C.S. § 6312. *See* 18 U.S.C. §§ 2252, 2252A; ALA.CODE § 13A–12–192; ALASKA STAT. § 11.61.127; ARIZ.REV.STAT. § 13–3553; ARK CODE ANN. § 5–27–304; CAL.PENAL CODE § 311.11; COLO.REV.STAT. § 18–6–403; CONN. GEN. STAT § 53a–196d; DEL.CODE ANN. tit. 11, § 1111; FLA. STAT. ANN. § 827.071; GA.CODE ANN. § 16–12–100; HAW.REV.STAT. § 707–752; IDAHO CODE §§ 18–1507, 18–1507(A); 720 ILL. COMP. STAT. 5/11–20.1; IND.CODE § 35–42–4–4; IOWA CODE § 728.12; KAN STAT. ANN. § 21–3516; KY.REV. STAT ANN. § 531.335; LA.REV.STAT. ANN. § 14:81.1; ME.REV.STAT. ANN. tit. 17–A, § 284; MD.CODE ANN., CRIM. LAW § 11–208; MASS. GEN. LAWS ch. 272, § 29C; MICH. COMP. LAWS § 750.145c; MINN. STAT. § 617.247; MISS CODE ANN. § 97–5–33; MO.REV.STAT. § 568.060; MONT.CODE ANN. § 45–5–625; NEB.REV.STAT § 28–1463.05; NEV.REV.STAT. § 200.730; N.H.REV.STAT. ANN. § 649–A:3; N.J. STAT. ANN. § 2C:24–4; N.M. STAT.

Court concluded that a State's ban on the possession and viewing of child pornography was constitutionally legitimate because it encourages possessors of such materials to destroy them. The *Osborne* Court explained that destruction of child pornography is "desirable because evidence suggests that pedophiles use child pornography to seduce other children into sexual activity." *Id.* at 111, 110 S.Ct. at 1697.

Turning to the constitutionality of the statute at issue here, the Superior Court examined a vagueness challenge to Section 6312 in *Commonwealth v. Savich,* 716 A.2d 1251 (Pa.Super.1998), *alloc. denied,* 558 Pa. 640, 738 A.2d 457 (1999), a case involving a photographer/possessor. In *Savich,* the defendant secretly videotaped female beach patrons, of all ages, in a women's bathhouse. The majority of the females videotaped were minors. The defendant was convicted of sexual abuse of children, in violation of Section 6312. The defendant challenged Section 6312 as void for vagueness because, he argued, the statute does not provide reasonable notice that depictions of nude minors not engaged in sexual activity still qualify as a "prohibited sexual act" and the "nudity" qualifier language—"nudity if such nudity is depicted for the purpose of sexual stimulation or gratification of any person who might view such depiction"—allows for arbitrary determinations as to which nude depictions are prohibited. *Savich,* 716 A.2d at 1255–56.

The *Savich* panel determined that the language "for the purpose of sexual stimulation or gratification" "permits the fact-finder to distinguish between depictions such as those in the present case from nude depictions taken for legitimate scientific, medical or educational activities, which are specifically exempt under § 6312(f)" and noted that Section 6312

ANN. § 30–6A–3; N.Y. PENAL LAW § 263.11, 263.16; N.C. GEN.STAT § 14–190.17A; N.D. CENT CODE § 12.1–27.2–04.1; OHIO REV CODE § 2907.321; OKLA STAT. tit. 21, § 1024.2; OR.REV STAT. §§ 163.686–163.689; R.I. GEN LAWS § 11–9–1.3; S.C.CODE § 16–15–410; S.D. CODIFIED LAWS § 22–24A–3; TENN.CODE ANN. § 39–17–1003; TEX PENAL CODE § 43.26; UTAH CODE ANN. § 76–5a–3; VT. STAT ANN. tit. 13, § 2827; VA.CODE § 18.2–374.1:1; WASH REV CODE § 9.68A.070; W. VA.CODE § 61–8C–3; WIS STAT § 948.12; WYO.STAT. ANN § 6–4–303.

"does not proscribe photographs taken for family, artistic or any other legitimate purpose because they are not taken for purposes of sexual gratification." *Savich*, 716 A.2d at 1256. Furthermore, the panel found that Section 6312 is not subject to arbitrary or discriminatory enforcement because an individual can only be charged or convicted for making videotapes depicting nude minors if the purpose in making such was for sexual stimulation or gratification. *Id.*

As to the *Savich* defendant's challenge that, under Section 6312(d), the Commonwealth may prosecute a defendant based on the future conduct of others—*i.e.*, a defendant must speculate whether "any person" viewing a depiction would be sexually stimulated or gratified—the panel found that the videotaping of nude minors for one's own sexual gratification or stimulation is clearly prohibited under Section 6312(a). The panel further held that the "Commonwealth need not allege or prove that [the defendant] intended to have others view the videotape in the future. Rather, proof of purpose of personal sexual gratification may be established by the circumstances surrounding the videotaping." *Id.* at 1257.[9]

Like Pennsylvania, three other States, Delaware, New Jersey and Iowa, employ the language "prohibited sexual act" in their statutes proscribing the possession of child pornography. These three States also list "nudity" as a "prohibited sexual act" and define it in the same or a substantially similar fashion as the definition in Section 6312(a).[10] However, the phrase

9. The Superior Court has entertained two other vagueness and/or overbreadth challenges to Section 6312, but neither of the cases is directly relevant to the issues before us today. *See Commonwealth v. Pepe*, 897 A.2d 463, 466 (Pa.Super.2006) ("A statute that revolves around the prohibition of actual children being involved in the production of sexually explicit material is clearly constitutional[,]" and Section 6312(d) "plainly only prohibit[s] images created through the use of actual minors.") (quotations omitted); *Commonwealth v. Kitchen*, 814 A.2d 209, 213 (Pa.Super.2002) (statute not overbroad because defendant "fail[ed] to set forth a constitutionally protected activity, which is being criminalized" because "no one can legally take pornographic photographs of a child, regardless of whether the child consents").

10. For example, the Delaware Code provides in relevant part that a person is guilty of possession of child pornography when:

"prohibited sexual act" has only been constitutionally challenged under the Iowa statute, IOWA CODE § 728.12. Specifically, as to possession, the Iowa statute provides in pertinent part:

It shall be unlawful to knowingly purchase or possess a negative, slide, book, magazine, computer, computer disk, or other print or visual medium, or an electronic, magnetic, or optical storage system, or any other type of storage system which depicts a minor engaging in a prohibited sexual act or the simulation of a prohibited sexual act.

IOWA CODE § 728.12(3). Under the Iowa statute, "prohibited sexual act" includes "[n]udity of a minor for the purpose of arousing or satisfying the sexual desires of a person who may view a depiction of the nude minor." IOWA CODE § 728.1(7)(g).

A review of the Iowa case in which the constitutionality of the term "nudity" was challenged is informative to this Court's analysis. In *State v. Hunter*, 550 N.W.2d 460 (Iowa 1996), the Iowa Supreme Court considered a vagueness challenge to its statutory qualifier of "nudity." In *Hunter*, according to the opinion, a father, dressed only in underwear and sexually aroused, photographed his twelve-year-old daughter in various stages of undress. In many of the photographs, the defen-

(1) the person knowingly possesses any visual depiction of a child engaging in a prohibited sexual act or in the simulation of such an act; or

(2) the person knowingly possesses any visual depiction which has been created, adapted, modified or edited so as to appear that a child is engaging in a prohibited sexual act or in the simulation of such an act.

DEL CODE ANN. tit. 11, § 1111. A "prohibited sexual act" under the Delaware statute includes "[n]udity, if such nudity is to be depicted for the purpose of the sexual stimulation or the sexual gratification of any individual who may view such depiction[.]" *Id.* at § 1103(f)(9).

In New Jersey,

Any person who knowingly possesses or knowingly views any photograph, film, videotape, computer program or file, video game or any other reproduction or reconstruction which depicts a child engaging in a prohibited sexual act or in the simulation of such an act, including on the Internet, is guilty of a crime of the fourth degree.

N.J. STAT. ANN. § 2C:24–4(b)(5)(b). "Nudity, if depicted for the purpose of sexual stimulation or gratification of any person who may view such depiction" is included as one meaning of "prohibited sexual act." N.J. STAT. ANN § 2C:24–4 (b)(1)(i).

dant's daughter was in provocative poses exposing her breasts, pubic area and buttocks. When the defendant attempted to have the film developed, the processor alerted the authorities. The defendant was charged under Section 728.12(1), which provides, *inter alia*, that "[i]t shall be unlawful to employ, use, persuade, induce, entice, coerce, solicit, knowingly permit, or otherwise cause or attempt to cause a minor to engage in a prohibited sexual act or in the simulation of a prohibited sexual act." IOWA CODE § 728.12(1). While this section of the statute does not address possession of child pornography, it contains the phrase "prohibited sexual act," the same phrase that is contained in the possession subsection, Section 728.12(3). *Hunter* thus is germane because it focuses on the interpretation of the term "nudity" under the definition of "prohibited sexual act."

The defendant in *Hunter* claimed that the definition of "prohibited sexual act" was unconstitutionally vague because (1) there was no further statutory definition of "nudity of a minor for the purpose of arousing or satisfying the sexual desires of a person" and (2) the statute allegedly could reach persons who merely derive sexual enjoyment from a photograph of a nude minor. *Hunter*, 550 N.W.2d at 463. In rejecting the defendant's claims, the court found that the term "nudity" is not vague because it allows individuals to distinguish between prohibited conduct and protected expression, and thus provides fair warning of what conduct is prohibited. *Id.* at 465. Further, the court noted that the common meaning of the term "nudity" is apparent. *Id.* Additionally, the court held that the phrase "for the purpose of arousing or satisfying the sexual desires of a person" is not vague. Rather, the court reasoned, "the challenged phrase allows the general public and those enforcing the statute to distinguish between prohibited conduct and protected expression." *Id.* at 465.

With this constitutional landscape as background, we turn to Section 6312(d) of Pennsylvania's statute. We find that the statute is not void for vagueness under Article I, Section 9 of the Pennsylvania Constitution or under the Four-

teenth Amendment. Section 6312(d) provides clear and understandable notice to all citizens as to what conduct is proscribed. The criminal offense of possession of child pornography is defined with sufficient definiteness. We do not agree with appellant's argument that the definition of "prohibited sexual act" (specifically the "nudity" qualifier, "if such nudity is depicted for the purpose of sexual stimulation or gratification of any person who might view such depiction," 18 Pa.C.S. § 6312(a)), is vague. Far from making the definition of "prohibited sexual act" vague, the qualifier to the term "nudity" actually clarifies and refines the reach of the statute, thus guarding against unfair and arbitrary enforcement of Section 6312(d). All that the Commonwealth must prove in a situation where a defendant is found in possession of nude images of children not engaged in any other prohibited sexual act under Section 6312(a), is that the nudity in the image is depicted for sexual stimulation or gratification.

Moreover, an ordinary person can certainly understand what conduct is prohibited and would have no need to guess at the meaning of the term "nudity" under Section 6312(a). The "nudity" qualifier does not create a subjective standard requiring people to guess at its meaning. The content, focus and setting of the images create an objective standard which allows a person of common intelligence to know what images are prohibited under the statute. The trial court found that "[a]t least [ ] 28 of the thousands of pornographic images stored within [a]ppellant['s][ ] computer depicted children engaged in vaginal intercourse, anal intercourse, oral sex, performing sex acts, or in various stages of undress or in sexually and [sic] in sexually provocative poses. This fact clearly satisfies the 'prohibited sexual act' definition contained in [Section 6312(a)]." Trial Ct. Op. at 13.[11] Utilizing the statuto-

11. In the next sentence of the opinion, the trial court explains that *"[w]ith respect to the remaining images,* which depicted only nudity and not depicting explicit sexual acts, the fact that they were found among images depicting explicit sexual acts proves that such nudity was for the purpose of sexual stimulation or gratification as required by the provisions of [§ 6312(a)]."* Trial Ct. Op. at 13 (emphasis added). Viewed on its own, this sentence could appear to indicate a finding of guilt as to the "remaining images"—*i.e.,* the remaining 22 of the 50 images.

ry definition of "prohibited sexual act," the court properly focused on the content of the images in making its determination.[12] In *Commonwealth v. Tiffany*, 926 A.2d 503, 512 (Pa.Super.2007), *alloc. filed* June 25, 2007, 498–99 MAL 2007, the Superior Court aptly noted that, " '[c]ommon sense and human experience' dictate that the photographer/possessor's photographs of 'young boys with their genitals exposed and smiling in provocative poses with a nude defendant near them were taken for the sole purpose of the sexual stimulation and gratification of the viewer[.]' " While *Tiffany* concerned the photographer/possessor, we see no reason why the same principle should not hold for simple possession of child pornography by a person: common sense and human experience dictate that an individual of ordinary intelligence, not a mind reader or a genius, can identify whether a photograph of a nude child depicts "nudity" for the purpose of sexual stimulation or gratification.

Furthermore, appellant's argument that the "any person" language in the nudity qualifier allows for arbitrary and discriminatory enforcement also fails. The "nudity" qualifier is just that—a qualifier—restricting the statute's reach to only those forms of nudity that are depicted for sexual stimulation or gratification. Consequently, the statute does not reach innocent family or artistic images of minors in a state of simple nudity, *e.g.*, a photograph of a baby's bath. Additionally, Section 6312(f) provides a further safeguard against arbitrary and discriminatory enforcement of Section 6312(d), ex-

However, appellant was found not guilty with respect to the remaining 22 images. Moreover, a fair reading of the record as a whole—including the trial and sentencing transcripts—reveals that, of the subset of the 28 images for which appellant was convicted that only involve nudity and do not depict an overt sexual act (*i.e.*, the only photographs implicated by appellant's vagueness challenge), the convictions were premised upon the content, focus and setting of those images—*e.g.*, the "sexually provocative poses" of the children involved.

12. Considering the content of the images alone, it is apparent how the trial court came to its ultimate conclusion of guilt on the 28 images at issue here. Although the children in some of the 28 images are not engaged in an overt sexual act, the images contain nudity, which the trial court reasonably found was depicted for the purpose of sexual stimulation or gratification.

cluding materials with a "bona fide educational, scientific, governmental or judicial purpose." 18 Pa.C.S. § 6312(f). There is no need for a family, artistic or commercial exception because, in those situations, nudity is only prohibited if it is for the purposes of sexual stimulation or gratification.

We also find that Section 6312(d) is not unconstitutionally overbroad under Article I, Section 7 of the Pennsylvania Constitution or under the First Amendment. Section 6312(d) simply does not purport to punish a substantial amount of constitutionally protected conduct. In this area, at least, it is of no import that Article I, Section 7 generally provides broader protection for freedom of expression than the United States Constitution. *See Pap's A.M. v. City of Erie,* 571 Pa. 375, 812 A.2d 591, 605 (2002). In *Free Speech Coalition,* the Court explained that the "freedom of speech has its limits; it does not embrace certain categories of speech, including defamation, incitement, obscenity, and pornography produced with real children." *Free Speech Coalition,* 535 U.S. at 245–46, 122 S.Ct. at 1399. Child pornography is clearly not afforded constitutional protection, *see Ferber,* 458 U.S. at 764, 102 S.Ct. at 3358, and no Pennsylvania case has purported to afford broader protection to child pornography under Article I, Section 7.

Appellant's overbreadth challenge fails because the statute proscribes possession of depictions of minors engaged in "prohibited sexual acts," one of those acts being nudity, but only when depicted for the purpose of sexual stimulation or gratification. The qualifier to the term "nudity" narrows and limits the reach of the statute. In doing so, the General Assembly made clear that it did not seek to punish individuals for viewing or possessing innocent materials containing naked minors, again, *e.g.,* a photograph of a baby's bath. As the U.S. Supreme Court explained in *Osborne,* the purpose of such language is to allow the "possession or viewing of material depicting nude minors where that conduct is morally innocent. Thus, the only conduct prohibited by the statute is conduct which is *not* morally innocent[.]" *Osborne,* 495 U.S. at 113 n.

10, 110 S.Ct. at 1698 n. 10 (quotations omitted). Here, as in *Osborne,* the statute's restrictions are not so broad as to proscribe all depictions of minors in a state of nudity, but rather only those depictions which constitute child pornography as defined under Section 6312(d).

There clearly is a compelling state interest in the protection and safeguarding of minors. The purpose of Section 6312 is plainly to protect children, end the abuse and exploitation of children, and eradicate the production and supply of child pornography. The prohibitions in Section 6312(d) and the definition of "prohibited sexual act" in Section 6312(a) comport with the above-stated principles. Thus, we conclude, Section 6312(d) is neither void for vagueness nor is it overbroad.

## II. Multiple Counts and Sentences

Appellant next challenges the legality of being tried for multiple counts of Sexual Abuse of Children, and the propriety of being separately sentenced.[13] Appellant argues that the trial court erred in converting a single act of possession into 28 possessory offenses based solely on the number of pornographic photographs or depictions. Citing this Court's OAJC in *Gatling,* 570 Pa. 34, 807 A.2d 890, appellant avers that the 28 convictions should have merged into a single possession charge for sentencing purposes. Appellant asserts that Section 6312(d) does not forbid pornographic images, but forbids possession of such images. Here, appellant maintains, there is only a single possession, albeit of multiple images.

Appellant argues that the General Assembly did not intend to subject a defendant to separate convictions and sentences for each piece of child pornography possessed under Section 6312(d) because the punished act is possession, and not the volume of material possessed. Petitioner notes that the General Assembly made no mention of a quantity of prohibited material in Section 6312(d), and argues that if the General

13. Since appellant received identical, concurrent sentences for each conviction, he would receive no immediate sentencing benefit if he were to prevail. However, success on this appeal could be significant in terms of the collateral consequences with respect to his multiple individual convictions.

Assembly intended sentencing exposure to hinge on the quantity of contraband, it would have employed quantitative categories as it has done with drug and theft offenses. Furthermore, appellant avers that only the General Assembly has authority to approve a "per photograph" penalty, and it did not do so explicitly. Appellant contends that imposing 28 separate sentences is unconstitutional in that it constitutes multiple punishments for a single crime.

The Commonwealth responds that, under Section 9765 of the Pennsylvania Sentencing Code and *Gatling*, unless the multiple offenses arise from a single criminal act, the doctrine of merger is not implicated. *See* 42 Pa.C.S. § 9765; *Gatling*, 807 A.2d at 894. The Commonwealth argues that appellant's crimes for possession of child pornography are not based on the same facts or on a single criminal act since each count stems from the possession of a separate and different pornographic image of a child. Moreover, the Commonwealth notes that there is no double jeopardy issue if the General Assembly does not intend crimes to merge. In the Commonwealth's view, appellant's argument that possession of either one or of one thousand depictions of child pornography both constitute only a single count under Section 6312(d) is illogical and contrary to the General Assembly's plain language and intent. In any event, the Commonwealth maintains that only lesser and greater included offenses can merge.

The Commonwealth charges that appellant's reliance on the merger doctrine is further misplaced because the downloading, saving, copying and viewing of the child pornography in this case was done on several dates, thus obviously creating several offenses. The Commonwealth echoes the Superior Court panel below that possession of each image of child pornography is a different act, and thus, a different offense because each time a child is photographed in this context, that child is violated and victimized. The Commonwealth concludes that defendants who commit such multiple violations should not receive a volume discount for the many separate crimes they commit.

■ The issues for review involve statutory interpretation. "The object of all interpretation and construction of statutes is to ascertain and effectuate the intention of the General Assembly. Every statute shall be construed, if possible, to give effect to all its provisions." 1 Pa.C.S. § 1921(a); *see also McGrory v. Commonwealth, Dep't of Transp., Bureau of Driver Licensing*, 591 Pa. 56, 915 A.2d 1155, 1158 (2007). In general, the best indication of the General Assembly's intent is the plain language of the statute. *See Martin v. Commonwealth, Dep't of Transp., Bureau of Driver Licensing*, 588 Pa. 429, 905 A.2d 438, 443 (2006); *In re Adoption of J.E.F.*, 587 Pa. 650, 902 A.2d 402, 407 (2006). When reviewing the language of a statute, the words and phrases employed by the General Assembly "shall be construed according to rules of grammar and according to their common and approved usage[.]" 1 Pa.C.S. § 1903(a); *see also Colville v. Allegheny County Ret. Bd.*, 592 Pa. 433, 926 A.2d 424, 431 (2007). When the words of a statute are clear and unambiguous, there is no need to look beyond the plain meaning of the statute "under the pretext of pursuing its spirit." 1 Pa.C.S. § 1921(b); *see also Commonwealth v. Conklin*, 587 Pa. 140, 897 A.2d 1168, 1175 (2006). Consequently, only when the words of a statute are ambiguous should a court seek to ascertain the intent of the General Assembly through consideration of statutory construction factors. 1 Pa.C.S. § 1921(c); *see also Koken v. Reliance Ins. Co.* 586 Pa. 269, 893 A.2d 70, 81 (2006).

The Superior Court panel below, and both parties here, couch these issues in terms of sentencing merger principles. Section 9765 provides that:

No crimes shall merge for sentencing purposes unless the crimes arise from a single criminal act and all of the statutory elements of one offense are included in the statutory elements of the other offense. Where crimes merge for sentencing purposes, the court may sentence the defendant only on the higher graded offense.

42 Pa.C.S. § 9765. This Court has explained that the merger doctrine is generally "a rule of statutory construction designed to determine whether the legislature intended for the punish-

ment of one offense to encompass that for another offense arising from the same criminal act or transaction." *Commonwealth v. Collins*, 564 Pa. 144, 764 A.2d 1056, 1057 (2001); *Commonwealth v. Anderson*, 538 Pa. 574, 650 A.2d 20, 21 (1994). Thus, a main objective in development of the merger doctrine is to prevent the punishment of a defendant more than once for one criminal act. *Gatling*, 807 A.2d at 894 (citing *Commonwealth v. Brown*, 346 Pa. 192, 29 A.2d 793, 796 (1943)).

In *Anderson*, the Court held that "in all criminal cases, the same facts may support multiple convictions and separate sentences for each conviction except in cases where the offenses are greater and lesser included offenses." *Anderson*, 650 A.2d at 22. The *Anderson* Court explained that "the same facts" language "means any act or acts which the accused has performed and any intent which the accused has manifested, regardless of whether these acts and intents are part of one criminal plan, scheme, transaction or encounter, or multiple criminal plans, schemes, transactions or encounters." *Id.* The Court further made note that a main concern regarding the merger doctrine is to "avoid giving criminals a 'volume discount' on crime" and further explained that "[i]f multiple acts of criminal violence were regarded as part of one larger criminal transaction or encounter which is punishable only as one crime, then there would be no legally recognized difference between a criminal who robs someone at gunpoint and a criminal who robs the person and during the same transaction or encounter pistol whips him in order to effect the robbery." *Id.; see also Commonwealth v. Nolan*, 579 Pa. 300, 855 A.2d 834, 839 (2004); *Commonwealth v. Belsar*, 544 Pa. 346, 676 A.2d 632, 634 (1996).

In *Gatling*, the case relied upon by the Superior Court panel in the case *sub judice*, the OAJC noted that the question of "whether the facts on which both offenses are charged constitute one solitary criminal act" must first be answered. *Gatling*, 807 A.2d at 899. Following that determination, the OAJC in *Gatling* explained that "[i]f the offenses stem from two different criminal acts, merger analysis is not required.

If, however, the event constitutes a single criminal act, a court must then determine whether or not the two convictions should merge." *Id.* Thus, the OAJC in *Gatling* would have adopted a rule whereby "an overarching chain of events does not constitute a single criminal act when there is a break in that chain." *Id.* at 900.

The purpose of the merger doctrine is double jeopardy-based, *i.e.*, to safeguard against multiple punishments for the same act. *See, e.g., Commonwealth v. Buffington,* 574 Pa. 29, 828 A.2d 1024, 1029 (2003) ("The Double Jeopardy Clause bars successive prosecutions and multiple punishments for the same offense.").[14] The test for sentencing merger is the same test utilized to decide whether more than one offense has been committed in the double jeopardy context. *See Commonwealth v. Jones,* 590 Pa. 356, 912 A.2d 815, 819 (2006) (plurality) (citing *Blockburger v. United States,* 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306 (1932)).[15] The *Jones* Court further observed that the "fact that this Court employs the same analysis in double jeopardy and sentencing merger cases is a function of the Double Jeopardy Clause's prohibition ... which protects against both successive punishments and successive prosecutions for the same offense." *Jones,* 912 A.2d at 823. The United States Supreme Court has explained, however, that "[e]ven if the crimes are the same[,] ... if it is evident that a state legislature intended to authorize cumulative punishments, a court's inquiry is at an end." *Ohio v. Johnson,* 467 U.S. 493, 499 n. 8, 104 S.Ct. 2536, 2541 n. 8, 81 L.Ed.2d 425 (1984).

Following its decision in this case, the Superior Court considered application of the merger doctrine under Section 6312(d) in *Commonwealth v. Koehler,* 914 A.2d 427 (Pa.Su-

---

14. The protections afforded by the double jeopardy clauses of the United States Constitution and of Art. I, Section 10 of the Pennsylvania Constitution are generally coextensive. *See Commonwealth v. Fletcher,* 580 Pa. 403, 861 A.2d 898, 912 (2004); *Pap's A.M. v. City of Erie,* 571 Pa. 375, 812 A.2d 591, 607 (2002); *Commonwealth, Dep't of Transp. v. McCafferty,* 563 Pa. 146, 758 A.2d 1155, 1160 n. 8 (2000).

15. The concurring and dissenting opinions in *Jones* did not take issue with the points for which we cite to *Jones* today.

per.2006). The *Koehler* court rejected the defendant/possessor's argument that "the imposition of 14 consecutive sentences created an illegal sentence, violating his constitutional right to be free from double jeopardy where, under the plain language of Section 6312(d), he committed but a single possessory offense warranting a single sentence." *Id.* at 438–39 (footnote omitted). The *Koehler* panel held that the "statute expressly criminalizes the possession of 'any ... computer depiction,' not the possession of any computer hard-drive containing such depictions." *Id.* at 439. Consequently, because the "record established that [the defendant] obtained each of the 14 video clips individually, at separate times, such that he possessed 14 separate computer depictions[,] ... [i]t was [ ] appropriate under Section 6312(d) to charge, convict, and sentence [the defendant] separately for each act of possessing each video clip[.]" *Id.* The panel therefore found that the merger doctrine was inapplicable "given the separate acts of possession occurring in this case[.]" *Id.*

With these principles in mind, we have no difficulty in concluding that double jeopardy protections are not implicated in the present case. Furthermore, the merger doctrine is of no benefit to appellant because a plain reading of the statute makes it apparent that the General Assembly intended possession of each pornographic image as a discrete and separate criminal act under Section 6312(d). Appellant's offenses do not represent a single criminal act, and therefore his multiple criminal acts support his multiple convictions and sentences. There is nothing in this Court's merger case law which supports the contention that only one sentence may be imposed for multiple criminal acts which result in multiple convictions.

Under Section 6312(d), it is a violation of the law for "[a]ny person who knowingly possesses or controls any book, magazine, pamphlet, slide, photograph, film, videotape, computer depiction or other material" which depicts a minor "engaging in a prohibited sexual act or in the simulation of such act." 18 Pa.C.S. § 6312(d). The General Assembly's use of the term "any," which could mean one or more items, suggests a lack of

restriction or limitation. Further, all of the objects listed in the statute are singular, *e.g.,* a "photograph" or a "computer depiction," meaning that each photograph or computer depiction constitutes a distinct occurrence of offensive conduct in violation of Section 6312(d). As the Superior Court correctly reasoned in *Koehler,* Section 6312(d) specifically criminalizes possession of any computer depiction, not possession of a computer hard drive which could contain an unknown quantity of images. *Koehler,* 914 A.2d at 439. The plain language of the statute evidences the intent of the General Assembly to make each image of child pornography possessed by an individual a separate, independent crime under Section 6312(d).

Furthermore, it is not difficult to discern why the General Assembly would target individual instances of possession. Each use of a minor to create a visual depiction of child pornography constitutes a separate and distinct abuse of that child, and thus represents an individual violation of the statute. As noted in *United States v. Esch,* "the key element of the offense is the use [of] a minor to engage in sexually explicit conduct for the purpose of creating a visual depiction of such conduct.... Each photograph depended upon a separate and distinct use of [a minor]." *Esch,* 832 F.2d 531, 542 (10th Cir.1987). As the Superior Court noted below, each image of child pornography victimized each child and subjected the child to "precisely the type of harm the statute seeks to prevent." *Davidson,* 860 A.2d at 583. We conclude that each image of child pornography creates a permanent record of a child's abuse, which results in continuing exploitation of a child when the image is subsequently viewed.

Our conclusion is bolstered by an examination of the law in other jurisdictions. The majority of jurisdictions facing such challenges have engaged in, *inter alia,* a "multiplicity analysis," that is, the propriety of "the charging of a single offense in separate counts," *Sanabria v. United States,* 437 U.S. 54, 65 n. 19, 98 S.Ct. 2170, 2179 n. 19, 57 L.Ed.2d 43 (1978). Often, the multiplicity analysis is applied exclusively. Although appellant does not specifically forward such a multiplicity claim here, to make better sense of the jurisprudential experience in

our sister states and lower federal courts, some discussion is appropriate. Of the other jurisdictions that have considered similar challenges, a significant majority have found that possession of each image of child pornography constitutes a separate offense and does not implicate double jeopardy, the conclusion that we have found here. *See, e.g., Esch,* 832 F.2d at 541–42 ("[E]ach use of a minor to create a visual depiction constitutes a separate and distinct violation, and thus represents the correct unit of prosecution.... [Therefore,] [t]he indictment properly charged separate counts for each of the photographs produced."); *People v. Renander,* 151 P.3d 657, 660 (Colo.App.2006) ("each offending image constitutes a separate and distinct sexual exploitation and therefore is a separate, chargeable offense" and constitutes an allowable unit of prosecution); *Fink v. State,* 817 A.2d 781, 788 (Del.2003) ("The clearest reading of the statute [ ] is that each individual 'visual depiction,' of child pornography that is knowingly ... possessed by a defendant constitutes the basis for a separate offense under the statute [ ].... Each picture is a crime against the child depicted as well as an offense to society."); *accord Sisson v. State,* 903 A.2d 288, 310 (Del.2006); *State v. Farnham,* 752 So.2d 12, 14–15 (Fla.Dist.Ct.App.2000) (defendant may be charged separately for possession of each image of child pornography because the language in the statute refers to possession of "a" pornographic photograph or other representation); *accord Burk v. State,* 705 So.2d 1003 (Fla. Dist.Ct.App.1998); *State v. Kujawa,* 929 So.2d 99, 111 (La.Ct. App.2006) ("use of the article 'any' to modify the proscribed images evidences a clear legislative intent that each such image constitutes a basis for a unit of prosecution") (citations omitted).[16]

**16.** To similar effect are the following: *State v. Rhoades,* 690 N.W.2d 135 (Minn.App.2004) (where defendant's conduct of possessing child pornography involved multiple victims, defendant may be charged with, convicted of and sentenced for multiple counts); *State v. Cobb,* 143 N.H. 638, 732 A.2d 425, 433–34 (N.H.1999) ("[T]he displaying or possessing of each photograph constitutes a separate offense.... [T]he legislature intended the unit of prosecution to be each ... photograph[.]" (citations omitted)); *State v. Howell,* 169 N.C.App. 58, 609 S.E.2d 417, 421 (2005) ("Intending to protect individual minors from

harm, the General Assembly wrote [the statute] to support a charge for each image.... We conclude, therefore, that the legislature intended ... that a defendant could be charged and convicted on multiple counts for the 43 child pornography images on his computer hard drive."); *State v. Martin*, 674 N.W.2d 291, 303 (S.D.2003) (defendant's convictions on multiple counts of possession of child pornography for images located on his computers did not violate double jeopardy because "the acts ... are [not] the same," the "images of child pornography found on [the defendant's] computers were downloaded and saved at separate times[,]" and the "pictures involved the exploitation of different children"); *Roise v. State*, 7 S.W.3d 225, 232 (Tex.App.1999) ("The simultaneous possession of each item of child pornography constitutes a separate offense or an allowable unit of prosecution.") (citation and quotation omitted), *accord Vineyard v. State*, 958 S.W.2d 834 (Tex.Crim. App.1998); *State v. Morrison*, 31 P.3d 547, 556 (Utah 2001) ("The clearest reading of the statute is that each individual 'visual representation' of child pornography that is knowingly possessed by a defendant constitutes the basis for a separate offense[.] ... [Thus, defendant's] possession of multiple photographs depicting child pornography constituted multiple violations of [the statute]."); *State v. Gailus*, 136 Wash. App. 191, 147 P.3d 1300, 1304 (2006) (legislature intended that "each digital file containing a 'photograph' ... depicting a minor engaged in sexually explicit conduct, provides the basis for a single 'unit of prosecution,' regardless of whether the files are stored on a single compact disc"), *accord State v. Ehli*, 115 Wash.App. 556, 62 P.3d 929, 932 (2003); *State v. Multaler*, 252 Wis.2d 54, 643 N.W.2d 437, 451 (Wis. 2002) (plain language of statute provides that possessor of *any* photograph or other pictorial reproduction has violated statute; therefore, defendant may be charged separately for each pornographic image involving a child saved on his computer disc); *State v. Schaefer*, 266 Wis.2d 719, 668 N.W.2d 760, 778 (Ct.App.2003) (Each image saved on Zip disc that contains child pornography provides basis for an individual charge because charges are different in fact and separate charges). *But see, United States v. Reedy*, 304 F.3d 358, 368–69 (5th Cir.2002) (because statute may apply to both single images and more than one image, appropriate unit of prosecution is ambiguous and ambiguity must be resolved in favor of defendant); *Girard v. State*, 883 So.2d 717, 723 (Ala.2003) ("proper unit of prosecution for the offense of possession of [child pornography] is the possession of the obscene matter, regardless of how many items are actually possessed"); *State v. Muhlenbruch*, 728 N.W.2d 212, 214 (Iowa 2007) (defendant, who possessed computer containing numerous pornographic images of minors, may only be charged with one count of possession of child pornography because statute "prohibits the 'possession' of a 'computer' or 'other print or visual *medium*' that depicts a minor engaged in prohibited sexual acts") (emphasis added); *State v. Donham*, 29 Kan.App.2d 78, 24 P.3d 750, 755 (2001) (under statute, "possessing a floppy disk containing one or more images of child pornography is a single act. As a result, possessing a floppy disk containing two or more sexually explicit images of a child cannot be divided into two or more distinct acts"); *State v. Fussell*, 941 So.2d 109, 125 (La.Ct.App.2006) ("A reading of [the statute] convinces us it is ambiguous as to what constitutes an

▆▆▆▆▆▆ In this case, the Commonwealth charged appellant with a violation of Section 6312(d), specifically possession of child pornography, multiple times. For multiplicity purposes, the relevant inquiry is defining the proper unit of prosecution. *Bell v. United States,* 349 U.S. 81, 75 S.Ct. 620, 99 L.Ed. 905 (1955).[17] To determine the correct unit of prosecution, the inquiry should focus on "whether separate and distinct prohibited acts, made punishable by law, have been committed." *United States v. Reedy,* 304 F.3d 358, 363–64 (5th Cir.2002). Thus, it is important for a court to look to how the legislature has defined the allowable "unit of prosecution," *Bell,* 349 U.S. at 81, 75 S.Ct. at 621, and identify the "key element of the [ ] offense," *United States v. Esch,* 832 F.2d 531, 541 (10th Cir.1987). However, the Supreme Court has explained that "[w]hen Congress leaves to the Judiciary the task of imputing to Congress an undeclared will, the ambiguity should be resolved in favor of lenity." *Bell,* 349 U.S. at 83, 75 S.Ct. at 622. Thus, the *Bell* Court held that "if Congress does not fix the punishment for a federal offense clearly and without ambiguity, doubt will be resolved against turning a single transaction into multiple offenses[.]" *Id.* at 84, 75 S.Ct. at 622.

Given our analysis above, it is apparent that *Bell's* rule of lenity is inapplicable. The General Assembly fixed a unit of

allowable unit of prosecution. Therefore, ... this ambiguity must be resolved in favor of lenity and the [d]efendant's multiple convictions for possession of pornography should be reduced to a single conviction[.]"); *State v. Pickett,* 211 S.W.3d 696, 706 (Tenn.2007) (although charged with 11 counts of possession of child pornography, evidence established only one offense because State did not demonstrate that defendant formed new intent as to each image and did not establish that legislature intended cumulative punishment); *State v. Sutherby,* 138 Wash.App. 609, 158 P.3d 91, 94 (2007) (because Legislature failed to specify unit of prosecution in statute, court must resolve ambiguity in favor of defendant; therefore, defendant's "violation of the statute by simultaneously possessing multiple materials in the same location is one unit of prosecution for which he is subject to only one conviction").

17. In *Bell,* a defendant charged with two identical violations of one statute argued that he had committed only a single offense and could not be subjected to cumulative punishment. The Supreme Court explained that, in such a situation, the task of the Court was to determine the allowable unit of prosecution under the statute, which did not explicitly provide such information.

prosecution: possession of each singular image or depiction of child pornography. Appellant is not entitled to a volume discount.

In summary, we hold that charging, trying, convicting and sentencing appellant for multiple counts of possession of child pornography is not unlawful under the statute. Appellant was not punished multiple times for the same act so as to constitute a violation of the Double Jeopardy Clause. Appellant was properly subject to punishment multiple times for committing multiple, independent violations of Section 6312(d).

For the foregoing reasons, we hold that Section 6312(d) is not unconstitutionally vague in violation of Article I, Section 9 of the Pennsylvania Constitution or the Fourteenth Amendment. Additionally, we hold that Section 6312(d) is not overbroad in violation of Article I, Section 7 of the Pennsylvania Constitution or the First Amendment. Furthermore, we find that it was the General Assembly's intention that a person charged under Section 6312(d) may be subjected to prosecution and punishment for each depiction of child pornography possessed, and that this intention is constitutional. Accordingly, we affirm.

Former Justices NIGRO and NEWMAN did not participate in the decision of this case.

Justice SAYLOR and EAKIN join the opinion.

Chief Justice CAPPY files a concurring and dissenting opinion.

Justice BAER files a concurring and dissenting opinion.

Chief Justice CAPPY, concurring and dissenting.

I join the majority opinion in its holding that 18 Pa.C.S. § 6312 is not void for vagueness, because the plain language of the statute provides fair warning of what conduct is prohibited. I write separately because I disagree with the majority that the trial court applied the correct interpretation of the statute when it evaluated whether certain images were, in fact, pornographic. As the plain language of the statute criminal-

izes the possession of an image *based upon the intent of the depicter to titillate the viewer,* an image of a nude child is either pornographic at the moment of its creation, or it is not. Therefore, absent independent knowledge of the depicter's intent, the context in which a third-party possessor stores an image is irrelevant to an inquiry of whether or not the image is pornographic. Rather, each image itself must indicate the intent of the depicter so that future viewers will be on notice that the image is illegal to possess. As I believe this standard may not have been properly applied by the factfinder, and for the reasons stated below, I would issue a limited remand. Thus, I dissent to the ultimate disposition of this case.

To come to this conclusion, I look to the words of the statute which are the key to ascertaining the intent of the Legislature. 1 Pa.C.S. § 1921. The words here are clear: Section 6312 criminalizes, *inter alia,* the knowing possession of images of a minor engaged in a "prohibited sexual act." Included in the definition of "prohibited sexual act" is "sexual intercourse ... lewd exhibition of the genitals or nudity if such nudity is depicted for the purpose of sexual stimulation or gratification of any person who might view such depiction." In ascertaining the intent of the Legislature, this Court can presume that the Legislature intended that this statute be constitutional. 1 Pa.C.S. § 1922(3). We can thus assume that Section 6312 comports with the First Amendment and Due Process requirements of both the state and federal constitutions.

As to free speech guarantees, the United States Supreme Court stated in *New York v. Ferber,* 458 U.S. 747, 765 n. 18, 102 S.Ct. 3348, 73 L.Ed.2d 1113 (1982), that depictions of children in a state of nudity, without more, constitute protected expression under the First Amendment. On the other hand, the Court found that images of minors involved in lewd sexual conduct had "exceedingly modest, if not de minimis" value that is outweighed by the state's compelling interest in protecting children from sexual exploitation and abuse. *See Ferber* 458 U.S. at 762–64, 102 S.Ct. 3348. Section 6312 comports with that mandate because a nude image of a child is not banned *per se,* but rather becomes illegal only when the

child is engaged in a prohibited sexual act which includes images where the depicter of the image intended to titillate a subsequent viewer. Thus, once an image of a nude child is overtly sexualized or lewd, it steps outside the bounds of First Amendment protection, and the Commonwealth is free to criminalize it.

The next constitutional tenet to consider is the Due Process requirement of notice. In order to avoid a facial void-for-vagueness challenge, the statute must give fair warning of what conduct it criminalizes. *Commonwealth v. Mack*, 467 Pa. 613, 359 A.2d 770, 771 (1976). To provide proper warning, the statute must provide a standard of conduct which is both ascertainable and objective. *Id.* at 772. Section 6312 provides an ascertainable and objective standard when it criminalizes images of children engaged in a prohibited **sexual** act when (1) the child is nude; and (2) the nudity is depicted in a sexually titillating manner, because the subjective intent of the depicter to sexually gratify the viewer will be manifest in the image itself.[1] The Legislature has clearly forbidden the knowing possession of images of nude children which are overtly sexualized or lascivious. As the majority stated, the content, focus and setting of the image itself will give fair notice to the viewer if the depicter had a prurient purpose. In other words, Section 6312 puts a viewer on notice that lewd or lascivious images of nude children are illegal.

It is notable that this construction of Section 6312 is comparable to the federal counterpart to Pennsylvania's law concerning the abuse of children. 18 U.S.C. §§ 2252 and 2256

---

1. There may be cases where the prurient intent of the depicter is not manifest in a particular image, but the possessor nonetheless has actual notice of the depicter's intent. For example, the possessor has control of a series of photographs clearly depicting the same child and in some of the series the child is engaged in a prohibited sexual act while in others the child is simply nude. The fact that the third-party possessor has the entire series would put him or her on notice of the depicter's intent to cause sexual stimulation, which is criminal under Section 6312. This is one of the rare cases in which circumstantial evidence beyond any particular image itself would be relevant in the case of the prosecution of a third-party possessor. Where the depicter is being prosecuted, circumstantial evidence surrounding the depicter's intent is obviously relevant. *See Lesoine, infra.*

prohibit certain images that do not otherwise feature children engaged in actual sexual acts by criminalizing "lascivious exhibition of the genitals." In construing this statute in *United States v. Knox*, 32 F.3d 733, 746 (3d Cir.1994), the Third Circuit Court of Appeals looked to the dictionary definition of "lascivious" which is defined as "tending to excite lust" or "lewd". Under both the federal and Pennsylvania statutes, images of children which tend to excite lust are identifiable and give notice to the viewer that the image is prohibited.

Clarifying the objective standard in Section 6312 is especially important in a case such as this one in which the depicter's identity is unknown, and when the possessor acquired the images through an intermediary on the internet. Previous precedent construing Section 6312 has involved prosecution of the depicter as opposed to a third-party possessor. *See Commonwealth v. Savich*, 716 A.2d 1251 (1998). Circumstantial evidence related to the depicter is always germane when it is the depicter who is charged with the crime, because the statute criminalizes behavior based on the depicter's intent. In the case of a third-party possessor, circumstantial evidence must be carefully vetted to insure that it meets the standard set forth in the statute which makes clear that child pornography only includes images created with prurient intent. For example, if a pedophile were to acquire a photograph of a child playing in the nude that had been taken by the child's parents as a family memento, and the pedophile were to add that photograph to his or her collection of child pornography, the fact that the pedophile uses the image for the purposes of sexual stimulation would not make that otherwise innocent image into pornography, because the intent of the depicter was not for the purposes of sexual titillation. Objectively, that image does not tend to excite lust, and therefore, it is not criminal to possess.

This objective standard further honors the First Amendment which protects artistic images of nude children. The case of *Lesoine v. County of Lackawanna*, No. 3CV980764, 2000 WL 1839140 at *1 (M.D.Pa.2000), provides a compelling example. In that case an amateur photographer took pictures

of her stepdaughter and two friends, ages 15, 16 and 16, standing nude under an outdoor shower on the beach. *Id.* The United States District Court of the Middle District of Pennsylvania noted that there was no suggestion that the photographs were taken for the purpose of sexual stimulation or gratification as the children in the images had not been posed nor did the plaintiff (depicter) possess a pornography collection or any other indicator of a prurient motive when she took the pictures.[2] *Id.* at *3. This means that these images of nude children were protected by the First Amendment. Further, a third-party possessor of those images would be on notice that the images were legal because the children were not depicted in a lewd or sexualized manner.

Eleven of the images for which the defendant in this case was convicted must be remanded to the factfinder for consideration under the standard as explained above. This is because these images are of nude children not engaged in overt sexual acts, and therefore, a determination must be made with respect to whether each image was depicted with the purpose of sexually stimulating the viewer. As these images were in the hands of a third-party possessor who did not have knowledge of the actual intent of the depicter, the images must be evaluated to insure that each image, on its face, gives notice of its criminality, irrespective of the fact that the defendant in this case chose to store these images with his pornography collection. I would remand Exhibits C–7, C–9, C–11, C–12, C15, C–16, C–17, C–18, C–19, C–38 and C–45 for reconsideration of Counts III, V, VII, VIII, XI, XII, XIII, XIV, XV, XXXIV and XLI to consider if each image is a depiction of a child or children who are merely nude, which is First Amendment protected expression, or if the intent of the depicter was to titillate the viewer.[3] Because of the nature of the sentenc-

---

**2.** As this case is related to the prosecution of the depicter, the notice requirement did not narrow the field of relevant circumstantial evidence, as it would have if it was a prosecution of a third-party possessor.

**3.** To make this determination about C–45, the factfinder from the bench trial will also have to consider all exhibits from C–42 through C–53, because C–45 was one of a series, and if the defendant saw the other

ing scheme imposed, I would vacate the sentence of the trial court, remand for reconsideration of the counts delineated above and for imposition of new sentence, if necessary. Otherwise, I join the majority opinion.

Justice BAER, concurring and dissenting.

I join Mr. Chief Justice Cappy in recommending a remand of this case to the trial court to make clear factual findings regarding whether each identified image was depicted for the purpose of sexually stimulating the viewer based purely on the content of the image, rather than the context in which the image is found.

I write separately to address an issue raised during my consideration of whether the statute provides for separate convictions for each individual photograph. I fully join the Majority's holding that the possession of each photograph constitutes a separate criminal act based on the General Assembly's use of the singular form of "photograph," or "computer depiction." 18 Pa.C.S. § 6312(d) ("Any person who knowingly possesses or controls any book, magazine, pamphlet, slide, photograph, film, videotape, computer depiction or other material depicting a child under the age of 18 years engaging in a prohibited sexual act or in the simulation of such act is guilty of a felony of the third degree."). Upon careful consideration, however, I believe the statute's use of the singular could result in arbitrary enforcement, and thus present a potential void-for-vagueness challenge. *See Commonwealth v. Duda,* 592 Pa. 164, 923 A.2d 1138, 1147 (2007) ("The due process void-for-vagueness doctrine requires that a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." (internal quotation marks omitted)); *Commonwealth v. Hughes,* 468 Pa. 502, 364 A.2d 306, 310 (1976) ("A vague law impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an

images in the series, it would inform a decision of whether or not he was on notice of the depicter's intent in C–45.

[a]d hoc and subjective basis, with the attendant dangers of arbitrary and discriminatory application.").

The statute allows for convictions for possession of a single "photograph" and for "a book," notwithstanding that such book could contain multiple photographs of child pornography. The potential for arbitrary and capricious enforcement arises in deciding whether a book with 500 photographs constitutes one count, as one book, or 500 separate counts, by virtue of the 500 individual photographs contained within it. If the book gives rise to 500 individual acts of criminal conduct, then I question the meaning of inclusion of the term "book" in the pertinent statutory section. Conversely, if the book gives rise to only one criminal act, which is consistent with a fair reading of the statute, then the determinative fact appears to be whether the defendant left his photographs loose, or organized them into a "book;" a term which could perhaps include a traditional photo album or loose leaf binder. The ambiguity highlighted herein has the potential to raise difficult distinctions for prosecutors trying to do the right thing, and for reviewing courts. I respectfully recommend that the legislature consider this issue, and provide district attorneys and courts with its wise guidance through statutory amendment before these questions come before us.

My concerns, however, do not affect my decision in the case at bar because the defendant did not raise this ambiguity and because it would not vary the counts charged in this case. Accordingly, I join Chief Justice Cappy's concurring and dissenting opinion in favor of a remand to consider eleven specific photographs.