J-S35012-22

2023 PA Super 105

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
Appellant :
:
:
v. :
:
:
MICHAEL T. MARTIN, JR. : No. 791 MDA 2022

Appeal from the Order Entered May 13, 2022
In the Court of Common Pleas of Franklin County Criminal Division at
No(s): CP-28-CR-0002065-2019

BEFORE: BENDER, P.J.E., McLAUGHLIN, J., and STEVENS, P.J.E.*

CONCURRING AND DISSENTING OPINION BY BENDER, P.J.E.:

**FILED: JUNE 12, 2023**

The trial court, having observed all the proceedings, concluded that

Appellee "is actually innocent." Trial Court Opinion, 5/13/22, at 36 (emphasis

omitted). While I agree with the Majority that the Commonwealth presented

sufficient evidence to sustain the convictions and that Appellee is not entitled

to discharge, I respectfully disagree with my learned colleagues' decision to

reverse the trial court's grant of a new trial on weight-of-the-evidence

grounds. I do not share the Majority's confidence that the trial court's

concerns are so unfounded that the trial court abused its discretionary

authority in granting a new trial. In my view, the Majority has brushed aside

the trial court's concerns by simply ruling on the underlying weight claim,

_____

* Former Justice specially assigned to the Superior Court.

which we may not do. I therefore respectfully dissent, as I would affirm that portion of the order and remand for a new trial.

I begin by repeating the standard of review, as I believe the Majority misapplies it:

> A motion for new trial on the grounds that the verdict is contrary to the weight of the evidence, concedes that there is sufficient evidence to sustain the verdict. Thus, the trial court is under no obligation to view the evidence in the light most favorable to the verdict winner. An allegation that the verdict is against the weight of the evidence is addressed to the discretion of the trial court. A new trial should not be granted because of a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion. A trial judge must do more than reassess the credibility of the witnesses and allege that he would not have assented to the verdict if he were a juror. Trial judges, in reviewing a claim that the verdict is against the weight of the evidence[,] do not sit as the thirteenth juror. Rather, the role of the trial judge is to determine that "notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice."

*Commonwealth v. Widmer*, 744 A.2d 745, 751–52 (Pa. 2000) (footnote and citations omitted). On appeal, our review is "distinct from the standard of review applied by the trial court[.]" *Commonwealth v. Clay*, 64 A.3d 1049, 1055 (Pa. 2013). We do not review the underlying weight of the evidence question. Instead, we examine the judge's exercise of discretion in ruling on that claim. *Id.* We therefore do not review the trial court's decision to grant or deny a new trial under a *de novo* standard of review. Instead, we decide whether the trial court's determination, or more accurately its reasons for reaching its decision, constituted an abuse of discretion.

The Majority correctly recites the basic standards, but I believe that it misapplies them. My colleagues — without elaboration — conclude that "the trial court plainly exceeded the limits of judicial discretion and invaded the exclusive domain of the jury by substituting its own credibility determination for that of the fact-finder." Maj. Op. at 21. However, I do not believe the relevant standard permits this Court to simply conclude that the trial court abused its discretion. Instead, we must explain how the trial court erred. **See Clay**, 64 A.3d at 1056 ("The Superior Court failed to consider the discretion exercised by the trial judge or the findings and reasons advanced by the judge in support of his determination that the verdicts were not against the weight of the evidence.").

So where did the trial court go astray when adjudicating the actual weight of the evidence claim? As best I can discern, the Majority concludes that the trial court abused its discretion because it disagrees with the result the court reached. It notes that the jury "clearly found the testimony and evidence presented at trial credible and elected not to believe Appellee's version of the events." Maj. Op. at 21.[1]

As an initial matter, the fact that the jury found the evidence credible is of limited value, since a weight-of-the-evidence claim can exist only if the jury

---

[1] The Majority overstates the jury's credibility determinations by asserting that "the jury heard testimony from multiple Commonwealth witnesses that Appellee sexually abused J.K." Maj. Op. at 21. Only three witnesses testified, and only J.K. offered any firsthand testimony that Appellee abused her.

found the testimony credible; otherwise, the jury would have returned a not-guilty verdict. We are not reviewing the underlying question of whether the weight of the evidence supported the verdict, and so the jury's assessment is beside the point. Indeed, the abuse-of-discretion standard contemplates that if the decision were ours to make in the first instance, we may have gone the other way. "When the court has come to a conclusion by the exercise of its discretion, the party complaining of it on appeal has a heavy burden; it is not sufficient to persuade the appellate court that it might have reached a different conclusion if, in the first place, charged with the duty imposed on the court below…." *Paden v. Baker Concrete Const., Inc.*, 658 A.2d 341, 343 (Pa. 1995) (citation omitted).

The Majority therefore proceeds from the premise that we must give deference to the jury's verdict, but not the trial court's assessment of the weight claim. Tellingly, the Majority states that this is not a case "in which a jury's verdict should be vacated on weight-of-the-evidence grounds." Maj. Op. at 20. But we are not asked to decide whether the verdict should be vacated. We are deciding only whether the trial court's reasoning for concluding that a new trial is warranted constituted an abuse of discretion. The Majority not only misapplies the standard of review, but it also serves to create a stacked deck in favor of the Commonwealth, as the prosecution obviously cannot seek a new trial if the jury acquits. Thus, it is already baked into the weight remedy that the jury deemed the Commonwealth's evidence credible and rejected any testimony by the defendant. The Majority has

- 4 -

effectively eliminated a trial court's ability to grant a new trial on weight grounds. The Commonwealth can always say that the grant of a new trial on weight grounds is unwarranted because the jury found its presentation credible. If that argument is enough to establish an abuse of discretion, it is unclear how any defendant could ever prevail if the Commonwealth chooses to appeal. This Court can always simply respond as it does now: "The jury clearly found the testimony and evidence presented at trial credible…." **Id.** at 21.

Fortunately, the appellate standards, properly applied, treat each side the same. Hence the observation that "[o]ne of the least assailable reasons for granting or denying a new trial is the lower court's determination that the verdict was or was not against the weight of the evidence and that new process was or was not dictated by the interests of justice." **Commonwealth v. Morales**, 91 A.3d 80, 91 (Pa. 2014) (citation omitted). Trial courts are naturally reluctant to disturb a jury's verdict and it certainly seems that courts are carefully exercising their discretion given the rarity of successful weight-of-the-evidence challenges. As an appellate court, we have no license to overturn those decisions, regardless of whether it favors or disfavors the Commonwealth, absent a clear abuse of discretion. As our Supreme Court stated in **Commonwealth v. DiStefano**, 265 A.3d 290 (Pa. 2021), if we find that the trial court abused its discretion we must adequately explain why:

> On appeal, the Superior Court noted that it reviews evidentiary rulings for an abuse of discretion, and ultimately concluded that the trial court abused its discretion. However, the Superior Court

- 5 -

never described the particulars of the "abuse of discretion" standard nor did the intermediate court specifically explain how the trial court abused its discretion.

*Id.* at 298.

*DiStefano* involved an evidentiary ruling, but the same logic applies to any claim that a trial court abused its discretion. To overrule the trial court's exercise of discretion, we must specifically explain how the trial court erred. A conclusory statement does not suffice. Given the lack of any developed explanation by the Majority addressing the trial court's actual rationale, I respectfully submit that the Majority has in truth reviewed the question *de novo.*[2]

The Majority's conclusion is substantively indistinguishable from a trial court's naked conclusion that a new trial is warranted. A mere recitation by the court that a new trial is warranted would be an abuse of discretion if not backed up by concrete observations and facts. It is no less an abuse for this Court to overrule the trial court by announcing that the trial court exceeded its authority. In *Commonwealth v. Brown*, 648 A.2d 1177 (Pa. 1994), our Supreme Court stated:

> An appellate court by its nature stands on a different plane than that of a trial court. Whereas a trial court's decision to grant or deny a new trial is aided by an on-the-scene evaluation of the evidence, an appellate court's review rests solely upon a cold

---

[2] The trial court's analysis of the weight claim is approximately fifteen pages. Excluding the passages quoting the relevant standards of law, the Majority's analysis comprises approximately one page. I do not suggest that mere length alone is dispositive, but if the trial court's reasons for granting a new trial "plainly exceeded the limits of judicial discretion," Maj. Op. at 21, the Majority could surely explain why that is so.

record. Because of this disparity in vantage points an appellate court is not empowered to merely substitute its opinion concerning the weight of the evidence for that of the trial judge. Rather our court has consistently held that appellate review of the trial court's grant of a new trial is to focus on whether the trial judge has palpably abused his discretion, as opposed to whether the appellate court can find support in the record for the jury's verdict….

*Id.* at 1190 (citation omitted, ellipsis in original).

The trial court's superior position with respect to observing the presentation of the case firsthand presumably explains why the relevant standard of review requires an abuse of discretion to overrule the trial court. As quoted, the relevant standard of review requires a "palpable" abuse of discretion. That arguably suggests an even higher degree of deference to the trial court is appropriate. *Cf. Stilp v. Commonwealth*, 905 A.2d 918, 965 (Pa. 2006) (noting that a party "challenging the constitutionality of an act of the General Assembly bears a heavy burden of proof" and must show that the act "clearly, palpably, and plainly violates the Constitution").[3] But even under a "regular" abuse of discretion standard, we must "give the gravest

---

[3] As noted by Chief Justice Bell's concurrence in *Wilson v. Nelson*, 263 A.2d 116 (Pa. 1969), the "abuse of discretion" standard has been described in at least five ways. "In discussing an 'abuse of discretion' by the lower [c]ourt, this Court has from time to time used five different tests: abuse of discretion, clear abuse of discretion, palpable abuse of discretion, manifest abuse of discretion, and gross abuse of discretion." *Id.* I submit that the trial court's institutional advantage arguably calls for a higher degree of deference. *See also Commonwealth v. Derry*, 150 A.3d 987, 995 n.2 (Pa. Super. 2016) (explaining that "review of the discretionary aspects of a [violation-of-probation] court's sentence … may, as a practical matter, dictate a greater degree of deference from a reviewing court").

consideration to the findings and reasons advanced by the trial judge."
*Widmer*, 744 A.2d at 753. The Majority fails to do so.

The foregoing establishes why I am unpersuaded that the Majority has adequately set forth sufficient reasons to justify its decision. I now explain why I find no abuse of discretion.

The Commonwealth asserts that the weight-of-the-evidence standards "prevent the Monday morning quarterbacking in which the trial court engaged during this case." Commonwealth's Brief at 37. It argues that the trial court simply acted as the thirteenth juror, disregarded the jury's judgment, and substituted its own. While the trial court's opinion recognizes it cannot do that, the Commonwealth argues that the substance of the court's analysis demonstrates it did so. "The trial court goes to great lengths to frame its analysis in a way [that] does not equate to the trial court['s] attempting to function as the thirteenth juror in this case, but the trial court's opinion does not bear out this assertion." *Id.* at 32. The Commonwealth notes that the trial court's opinion discusses alternative theories to explain J.K.'s inconsistent testimony, with the court "substitut[ing] the factual and credibility determinations of a jury of twelve of [Appellee]'s peers[, and] did so by relying upon a series of speculative conclusions that have absolutely no basis in the record." *Id.* at 36. In this regard, the Commonwealth cites the trial court's admission that it "began its weight[-]of[-]the[-]evidence analysis months before such an issue was even before the court." *Id.* at 37 (emphasis omitted). The Commonwealth also characterizes large portions of the trial

court's opinion as "read[ing] more like a collateral post-conviction petition for relief blindly alleging ineffective assistance of trial counsel than a judicial opinion." ***Id.*** at 35.

It is clear that the trial court cannot rule on a weight claim as if casting a vote in the jury room and treating that vote as authoritative. The ***Widmer*** Court explained "the limits of a trial court's discretion" to grant or deny a motion for a new trial as follows:

> The term "discretion" imports the exercise of judgment, wisdom and skill so as to reach a dispassionate conclusion within the framework of the law, and is not exercised for the purpose of giving effect to the will of the judge. Discretion must be exercised on the foundation of reason, as opposed to prejudice, personal motivations, caprice or arbitrary actions. Discretion is abused where the course pursued represents not merely an error of judgment, but where the judgment is manifestly unreasonable or where the law is not applied or where the record shows that the action is a result of partiality, prejudice, bias or ill-will.

***Widmer***, 744 A.2d at 753 (citation omitted).

I do not find the court's judgment to be manifestly unreasonable, nor do I conclude that the trial court's opinion evidences any partiality, prejudice, bias, or ill-will. In reaching this conclusion, I do not suggest that it is obvious that the trial court's decision should be upheld.[4] As explored in ***Austin v.***

_____

[4] As an overarching matter, I agree that the trial court's opinion inappropriately discusses potential ineffective assistance of counsel claims throughout. Some of these observations strike me as incorrect even beyond the impropriety of the court's raising them *sua sponte*. For example, the trial court asserted that a new trial was likely warranted based on an erroneous sustainment of a hearsay objection concerning what E.A. (J.K.'s mother) told J.K. prior to J.K.'s second interview with the Children's Advocacy Center. *(Footnote Continued Next Page)*

*Ridge*, 255 A.2d 123 (Pa. 1969), "the central problem" in addressing weight challenges is the degree of freedom that should be afforded a trial court "to review and set aside a jury verdict where the evidence presented to the jury is legally sufficient to sustain that verdict[.]" *Id.* at 124-25. The "rule may be simply stated; its content is more elusive; and its application will of course require a continuing exercise of judicial sensitivity." *Id.* at 125. This type of case boils down to whether J.K. was credible, and thus there is a risk that the trial court simply disagreed with the jury's credibility determination. However, after careful review of the trial court's opinion, I conclude that the trial court based its decision "on the foundation of reason" as required by *Widmer*.

To see why this case is not simply one where the trial court granted a new trial only because it would have acquitted Appellee, I briefly set forth

_____

However, Appellee leveled that objection, and counsel is presumed to have a strategic reason for doing so. If that judgment is objectively reasonable, any ineffective assistance of counsel claim necessarily fails.

Oddly, the trial court concluded that Appellee had a good reason to make the objection. The court believed that sustaining the objection "suggested to the jury that [E.A.] had 'made' J.K. go to the second … interview, calling J.K.'s credibility into question, but the jury was deprived of hearing J.K.'s true reason and was asked to assume that her reason was nefarious." Trial Court Opinion, 5/13/22, at 42. I fail to see how the jury's believing that J.K. was forced to go to the interview by E.A. or acted nefariously would harm Appellee at all. It would certainly help Appellee if the jury thought that J.K. was an unwilling participant and disclosed the abuse only because that was what her mother expected. Indeed, that may well explain why Appellee objected. But, in any event, it was premature to write an opinion that announces an ineffective-assistance-of-counsel claim would succeed if presented. Nonetheless, I take the trial court's analysis of those points to reflect its fervent belief that Appellee is innocent and that a grave injustice has occurred.

some additional factual background relevant to the trial court's conclusion. J.K. was fifteen years old at the time of trial, and between seven and eight-years old when the abuse occurred. The abuse allegedly occurred throughout the 2013 school year, when J.K. and her family resided with Appellee, her uncle. The Commonwealth called three witnesses at trial: J.K., her mother (E.A.), and Detective David Rush.

E.A. testified that she, her husband, and her seven children (six daughters and one son),[5] had to find housing after their home was condemned. N.T., 8/31/21, at 29. The family had trouble finding a rental property, leading E.A. to ask her sister, Pamela Martin, if she and her family could temporarily move into her home. Ms. Martin agreed.

Appellee was married to Ms. Martin, and the couple had one son. The three lived in a three-bedroom home with two floors.[6] The first floor contained a "computer room," a dining room, and kitchen. The dining room had a staircase leading to the second floor, which contained the three bedrooms and the home's only bathroom. Appellee and Ms. Martin slept in one of the bedrooms. *Id.* at 40. One of the other two bedrooms belonged to Appellee's son, and J.K.'s sole brother moved into that room. *Id.* E.A. and her then-husband moved into the third and final bedroom. Two of their daughters were

---

[5] E.A. and her husband later divorced, following his convictions for sexually abusing two of J.K.'s sisters.

[6] The home also had a basement and an attic, but those areas were not used as a living space. N.T., 8/31/21, at 38.

"really small" and thus stayed in that room full-time. *Id.* at 41. A third daughter would "sometimes" sleep there. *Id.* J.K. and her sister slept downstairs in the room adjoining the computer room, as would the aforementioned child when not sleeping in E.A.'s room. *Id.* at 28, 42.

E.A. testified that the family lived with Appellee for the full 2013 school year. J.K. attended the elementary school, which was within walking distance. The school day was approximately 8:40 a.m. to 3:25 p.m. *Id*. J.K. would leave the home at approximately 8:15 a.m. *Id.* at 48. Of the four adults, only Appellee was employed. *Id.* at 46. On days that Appellee worked, he would leave the home around 1:30 p.m. and return around 11:45 p.m. *Id.* at 48. The parties stipulated to the authenticity of Appellee's work records, which established that he worked Monday through Friday, starting his shift between 2:15 and 2:30 p.m. *Id.* at 144, 163. Appellee did not work weekends, and he was absent from work during the periods of December 17 through December 31; January 6 to January 31; and March 10 through March 31. *Id.* at 164-65. In total, including weekends, Appellee was not at work for 122 days of the nine months that J.K. and her family resided in his home. *Id.* at 158.

J.K. testified that Appellee would make her perform oral sex on him, "[u]sually in the computer room." *Id.* at 72. Appellee began sexually abusing her "a couple days into … the first week" after she moved into Appellee's home. *Id.* J.K. testified that nobody else would be present in the room. *Id.* at 73. The other residents would "[s]ometimes … be upstairs and sometimes

they would be in the outside of the house in the back yard." *Id.* at 75. J.K. said that the incidents "would usually be in the daytime." *Id.* at 76. On cross-examination, J.K. agreed that, in a videotaped statement, she said that the abuse happened every day, but clarified that "[i]t happened every other day because sometimes [there] would be … breaks." *Id.* at 114. The abuse continued until J.K. "said no the one time and then we moved out shortly after." *Id.* at 74.

J.K. disclosed the abuse to her two sisters during a party at their home, years after leaving Appellee's residence. *Id.* at 123. She testified that some of her sisters and their friends told J.K. "to go upstairs because they wanted to talk. … I was so angry because everyone kept leaving me out of stuff, and it just slipped out because I thought, well, maybe if I said that, then I would actually be included in stuff." *Id.* at 80. The comment that "slipped out" was J.K. saying to the girls, "Well, has anyone ever asked you to suck their dick for candy?" *Id.* At the time, J.K. was unaware that two of her sisters had been molested by their stepfather. *Id.* at 81. The sisters told J.K. that they had been abused and the three girls talked to E.A. *Id.* E.A. then contacted the authorities, and the investigation commenced.

Certainly, the facts are unusual in that so many people shared a small home, and Appellee was the only adult who was employed. And as the trial court explained at length in its opinion, J.K.'s testimony regarding the frequency of the abuse is contradicted by Appellee's work records, which the Commonwealth agreed were authentic. J.K. testified that the abuse occurred

in the daytime, when most of the household would be awake, thereby making it difficult to serially abuse J.K. without someone noticing. The fact that a convicted sexual abuser also lived with Appellee, and molested J.K.'s siblings at some unknown point in time, was also relevant to the trial court's assessment of the weight of the evidence. So, too, was the fact that J.K. disclosed the abuse years after the fact and only because the older siblings were "leaving [her] out of stuff." *Id.* at 80.

These points may well have not ultimately mattered had I viewed J.K.'s testimony firsthand, but I did not. Neither did the Majority. Only the trial court did, and the trial judge stated that this case was the first time its conscience had been shocked by a verdict. "Until now, we had yet to be presented with a case where our conscience was anywhere near our definition of 'shocked.'" Trial Court Opinion, 5/13/22, at 37 (emphasis omitted).[7] In fact, the trial court came away convinced that Appellee is innocent. I do not agree with the Majority's cursory dismissal of the trial court's assessment of the case.

_____

[7] I disagree with the Commonwealth's suggestion that the trial court acted capriciously because it began considering the validity of a weight claim before Appellee raised the claim. We have stated that when "the jury's verdict, at the time of its rendition, causes the trial judge to lose his breath, temporarily, and causes him to almost fall from the bench, then it is truly shocking to the judicial conscience." *Commonwealth v. Davidson*, 860 A.2d 575, 581 (Pa. Super. 2004) (citations omitted), *aff'd*, 938 A.2d 198 (Pa. 2007). Thus, a "delayed" recognition prompted by a defendant's raising the claim would subject the judge to a charge that the verdict was not against the weight of the evidence, since the shocking nature of the verdict would have been obvious at the time.

In sum, our opinion on whether the trial court is correct that Appellee is innocent of these crimes is beside the point. We only ask whether the trial court abused its discretion in arriving at that conclusion. As I conclude that it did not, I would affirm the grant of a new trial. Therefore, I respectfully dissent.