817 A.2d 451

**COMMONWEALTH of Pennsylvania, Appellant,**

v.

**Erik Dwayne CRAVEN, Appellee.**

**Commonwealth of Pennsylvania, Appellant,**

v.

**Otis George Townsend a/k/a Gregory Townsend, Appellee.**

Supreme Court of Pennsylvania.

Argued/Submitted March 4, 2002.

Decided March 4, 2003.

Amy E. Constantine, Michael W. Streily, for Commonwealth of Pennsylvania.

Stephen L. Pope, for Stephen L. Pope.

Kenneth J. Haber, for Erik Dwayne Craven.

Ralph Karsh, for Otis George Townsend.

Before CAPPY, C.J., and CASTILLE, NIGRO, NEWMAN, SAYLOR and EAKIN, JJ.

*OPINION*

Justice NIGRO.

The issue before the Court in this consolidated appeal is whether the trial court properly determined that 18 Pa.C.S. § 5511(h.1)(6), which criminalizes an individual's attendance at an animal fight "as a spectator," is unconstitutionally vague and overbroad. As we conclude that the statute is constitutionally sound, we reverse.

On June 26, 1999, two Pittsburgh police officers, Officer Nicholas Uva and Officer Eric Churilla, were on routine patrol in the Ferrywood section of Pittsburgh when they noticed three men standing near a sport utility vehicle with the tailgate open. As they neared the vehicle, the officers could see a dog crate that appeared to be full of blood. The officers approached the three men, later identified as Appellee Erik Craven, Appellee Otis Townsend, and William Tench, to see if there was an injured dog to which they could offer any assistance. Tench told the officers that his dog had broken loose and fought with another dog. The officers then heard whimpering sounds from a nearby garage and asked Tench if he owned the garage. Tench responded that the garage was owned by his cousin, but that his cousin had given him permission to use it. Officer Uva then asked Tench if he could conduct a search and Tench consented. At that point, three more men, later identified as Marvin Howard, John Moran, and Phillip Worthy, emerged from the garage and joined Craven, Townsend, and Tench.

Officer Uva entered the garage and traced the whimpering to another dog crate, in which he found a pit bullterrier bleeding from lacerations and bite wounds. Officer Uva also noticed equipment commonly used to train dogs for fighting. After making these observations, Officer Uva exited the garage and asked Tench where he could find the other dog from the fight. Tench said that the dog was in another vehicle parked directly in front of the sports utility vehicle. Upon looking into the second vehicle, Officer Uva found another pit

bullterrier covered by a towel. The dog was lethargic and its breathing was labored.

The officers then asked the men for identification before they seized both vehicles, finding a video camera and two videotapes. One videotape contained two recorded dogfights and the other videotape contained commercials/endorsements for dogs that participated in such fights.[1] Appellees Craven and Townsend were clearly seen on the videotapes during the dogfights, standing above the fighting ring with their arms crossed, watching the fight. N.T., 8/12/99, at 38–42 (identifying Townsend and Craven as spectators at dogfights). *See also* Videotape of Dogfights, Exhibit B, Motions Hearing, 3/9/2000. Based on their attendance at the dogfight, Appellees were charged with one count of cruelty to animals and one count of criminal conspiracy.[2]

Although the Commonwealth stipulated that there was no evidence that Appellees paid a fee to view the dogfights, it nonetheless contended that Appellees were guilty under subsection six of the animal cruelty statute, which provides, in relevant part:

Animal fighting.—A person commits a felony of the third degree if he:

&ast; &ast; &ast; &ast;

(6) pays for admission to an animal fight or *attends an animal fight as a spectator.*

1. The fights on the videotape appeared to take place within a private residence in a room covered with carpet. The fighting ring appeared to be constructed with pieces of wood, each approximately three feet off the ground, which were placed perpendicular to the walls of the room. During one fight on the videotape, two dogs faced each other as three or four individuals stood in the ring, urging them to attack one another. The dogs fought for approximately twenty to thirty minutes, with just one break of about thirty seconds. During the break, one of the dogs collapsed on the floor and was held up to face the other dog, before being viciously attacked again.

2. Howard, Moran, Worth, and Tench were also arrested. Unlike Appellees, they were each charged with four counts of cruelty to animals and one count of criminal conspiracy because the videotape made clear that they were the ones responsible for organizing the dogfight.

18 Pa.C.S. § 5511(h.1)(6) (emphasis added).[3] Craven filed a petition for a writ of habeas corpus, asserting that Subsection 5511(h.1)(6) is unconstitutionally vague and overbroad.[4] The trial court agreed, finding that Subsection 5511(h.1)(6) fails to place ordinary individuals on notice as to what conduct violates that part of the statute. According to the trial court, Subsection 5511(h.1)(6) imposes criminal liability upon an individual merely for being present at the scene of an animal fight and by doing so, the subsection "seeks to eliminate a mens rea requirement for culpability and to impose strict liability" for mere presence at the scene of such a fight.[5] Trial Ct. Op. at 9. We disagree.

3. Section (h.1) of the animal cruelty statute provides in full:
(h.1) Animal fighting.—A person commits a felony of the third degree if he:
(1) for amusement or gain, causes, allows or permits any animal to engage in animal fighting;
(2) receives compensation for the admission of another person to any place kept or used for animal fighting;
(3) owns, possesses, keeps, trains, promotes, purchases or knowingly sells any animal for animal fighting;
(4) in any way knowingly encourages, aids or assists therein;
(5) wagers on the outcome of an animal fight;
(6) pays for admission to an animal fight or attends an animal fight as a spectator; or
(7) knowingly permits any place under his control or possession to be kept or used in animal fighting.
18 Pa.C.S. § 5511(h.1).

4. During arguments before the trial court, Townsend moved to join Craven's petition for a writ of habeas corpus challenging the constitutionality of Subsection 5511(h.1)(6). While it is not clear from the record whether the trial court specifically ruled upon Townsend's motion, the trial court explicitly stated in its opinion that all of the defendants were permitted to join in the hearing with regard to the question of the constitutionality of the animal cruelty statute. Trial Ct. Op. at 4. It is also clear that Townsend received the benefit of the arguments set forth in Craven's writ because the trial court rejected the guilty pleas of both Appellees after ruling that Subsection 5511(h.1)(6) was unconstitutional. On appeal to this Court, Townsend has not filed a brief.

5. In reaching this conclusion, the trial court looked to the other subsections in Subsection 5511(h.1) and noted that each of those subsections, with the exception of subsection six, clearly "indicate[s] a conscious and knowing activity by the individual committing [the] crime." Trial Ct. Op. at 10.

■ A statute is presumed constitutional and will not be declared unconstitutional unless it "clearly, palpably and plainly" violates the Constitution. *Commonwealth v. Barud*, 545 Pa. 297, 681 A.2d 162, 165 (1996) (quoting *Commonwealth v. Mikulan*, 504 Pa. 244, 470 A.2d 1339, 1340 (1983)). All doubts are therefore to be resolved in favor of a finding of constitutionality. *Commonwealth v. Hendrickson*, 555 Pa. 277, 724 A.2d 315, 317 (1999). A statute will only be found to be void for vagueness if it fails to define unlawful conduct with sufficient definiteness so that ordinary people understand what conduct is prohibited. *Id.* at 319 (citing *Kolender v. Lawson*, 461 U.S. 352, 357, 103 S.Ct. 1855, 75 L.Ed.2d 903 (1983); *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 498, 102 S.Ct. 1186, 71 L.Ed.2d 362 (1982)). At the same time, a statute will only be deemed to be overbroad if it punishes a substantial amount of constitutionally protected conduct. *Id.* at 317–18.

■ Here, the trial court concluded that Subsection 5511(h.1)(6) was unconstitutional because it criminalizes one's mere presence at an animal fight. The statute, however, does no such thing. Rather, under its plain language, the statute only criminalizes attendance at an animal fight "*as a spectator.*" 18 Pa.C.S. § 5511(h.1)(6). Webster's Dictionary defines "spectator" as "one that looks on or beholds; [especially] one witnessing an exhibition (as a sports event)." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY UNABRIDGED 2188 (1993). "Presence," on the other hand, is defined as "the state or being in one place and not elsewhere[;] the fact of being in company, attendance, or association." *Id.* at 1793. The two are clearly distinct. A spectator does more than a person who is merely present at a particular place by happenstance, since a spectator, by definition, makes a conscious choice to view and witness an exhibition. Thus, contrary to the trial court's finding, Subsection 5511(h.1)(6), like all of the other subsections in Section 5511(h.1) of the animal cruelty statute, does "indicate a conscious and knowing activity by the individual committing [the] crime." Trial Ct. Op. at 10. We therefore conclude that Subsection 5511(h.1)(6)

is neither unconstitutionally vague nor overbroad as it does not, as the trial court found, impose strict liability on a person merely for being present at a dogfight. Rather, it criminalizes a person's conscious decision to attend an illegal animal fight as a spectator and by doing so, puts individuals on sufficient notice as to what conduct is proscribed.[6]

The Michigan Court of Appeals reached a similar conclusion in *People v. Cumper*, 83 Mich.App. 490, 268 N.W.2d 696 (1978), where the defendants were charged with violating Michigan's animal cruelty statute, which makes it illegal to, *inter alia*, "be present as a spectator" at a dogfight. In rejecting the defendants' claim that this part of the statute was unconstitutionally vague and overbroad, the court explained:

> It is apparent that the statute does not punish the witnessing of a dogfight per se. It punishes attendance as a spectator at an event legitimately prohibited by law. It is neither vague nor overbroad. The accused had fair notice of the conduct proscribed.

*Id.* at 698.

As we likewise hold that Subsection 5511(h.1)(6) of Pennsylvania's animal cruelty statute is not unconstitutionally vague or overbroad, we reverse the trial court's order finding otherwise and remand the matter for proceedings consistent with this opinion.

Former Chief Justice ZAPPALA did not participate in the decision of the appeal at No. 18 WAP 2000.

Justice LAMB did not participate in the consideration or decision of the appeal at No. 19 WAP 2000.

6. The trial court expressed its concern, echoed by Appellee Craven in his brief to this Court, that Subsection 5511(h.1)(6) is broad enough to punish people who, for instance, happen to stumble upon an animal fight in progress. This is not, however, what the subsection punishes. To the contrary, by limiting criminal liability to those who attend an animal fight as a spectator, Subsection 5511(h.1)(6) clearly aims to punish only those people who specifically choose to, *i.e.* knowingly, attend an animal fight as a purposeful observer.