J-A15015-23

2023 PA Super 129

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
:
ELISSA DEIBLE :
:
Appellant : No. 1258 WDA 2022

Appeal from the Judgment of Sentence Entered September 26, 2022
In the Court of Common Pleas of Jefferson County
Criminal Division at CP-33-SA-0000015-2022

BEFORE: MURRAY, J., McLAUGHLIN, J., and COLINS, J.[*]

OPINION BY MURRAY, J.: **FILED: July 25, 2023**

Elissa Deible (Appellant) appeals from the judgment of sentence entered after the trial court convicted her of animal cruelty, 18 Pa.C.S.A. § 5533(a). We affirm.

**FACTS**

Appellant had owned a 17-year-old cairn terrier (the Dog) since he was a puppy. N.T., 9/26/22, at 84, 92, 95. Appellant stated that on April 7, 2022, the Dog "somehow got out" from the fence and latched gates at her home. *Id.* at 81. The Dog had escaped before. *Id.*

Alli Zacherl testified that she was driving on the evening of April 7, 2022, when she saw "a dog running at me." *Id.* at 6, 16. Ms. Zacherl stated:

It was just like a little fluff ball and I noticed it was green so I just kind of looked at it. Then I realized it was a dog so I …

---

[*] Retired Senior Judge assigned to the Superior Court.

drove up to it. I opened my door and it took him a second to come around to the side of my door, but then once he saw me, he … got excited to see someone, I think. …

I was petting him and I saw the sticks and everything so I was trying to pick out what I could. … There were a ton of sticks just in his fur. So I started pulling out the ones that I could but then I started actually looking at him. Then I saw that there were some that were really stuck in there and then I saw metal that was imbedded. So, then that's when I realized I didn't know what was going on but I wanted to get him help ….

*Id.* at 6-7.

Ms. Zacherl described "mats all over his face, his back was shaved and he had … two distinctive pieces of metal on his back legs." *Id.* at 7. The Dog had sticks "on his belly, on his front legs, and his back legs." *Id.* He had "a waddle but he could walk." *Id.*

Ms. Zacherl called her friend, Summer Verdill (Summer), whose sister is a veterinary assistant, because Ms. Zacherl "felt … the objects [that] were in his fur, some of them were beyond my power of just pulling out[.]" *Id.* at 7-8. Ms. Zacherl took pictures of the Dog. *Id.* at 9. In the pictures, Ms. Zacherl observed the Dog had

a lot of mats all over around his nose and his mouth. Then his eyes, they kind of like hung over … and his ears were just completely hanging over with the fur and everything. Then his front paws have the sticks you can kind of see there. And … the top of his back is shaved but the bottom is still long.

*Id.* at 10.

Ms. Zacherl drove the Dog to Summer's house, where she got a collar and leash, "because there wasn't one on him." *Id.* at 8-9. Next, Ms. Zacherl and Summer, along with Summer's sister Ginger Verdill (Ginger), drove the

Dog to North Fork Veterinary Clinic. *Id.* at 11. Although the clinic was closed, Ginger had called the veterinarian, Dr. Pierson, who met the women at the clinic. *Id.* Dr. Pierson "shaved what she could of the [D]og," which included "basically everything but his face." *Id.* at 13. Afterwards, Ms. Zacherl, Summer, and Ginger took the Dog to Gateway Humane Society. *Id.* at 14, 16.

Ginger Verdill testified that she is a veterinary assistant, and corroborated Ms. Zacherl's account of events on April 7, 2022, as well as the Dog's condition. *Id.* at 19-27. Ginger identified pictures taken of the Dog that day, with metal and twigs in his fur, and noted the Dog was "severely matted, especially under his eyes, [and] he's green." *Id.* at 22-24; Commonwealth Exhibits 5 & 6.

The president of Gateway Humane Society, Linda Peterson, testified that the Dog arrived at the shelter on April 7, 2022. Ms. Peterson "knew who the [D]og belonged to because [the Dog] had come in on December 19 of 2021." *Id.* at 33. Ms. Peterson relayed that the Humane Society had publicized the Dog and Appellant claimed him. *Id.* The Dog was matted in December 2021; Ms. Peterson advised Appellant that "he needs groom[ing] and [Appellant] said that she knew that." *Id.* at 34, 36. After arriving at the Gateway Humane Society a second time on April 7, 2022, he stayed until April 11, 2022, when he was taken to another animal shelter. *Id.* at 34.

Margo Stefanic, who operates Willow Run Sanctuary (Willow Run), testified that a humane officer contacted her about the Dog on April 8 or 9,

2022. *Id.* at 37-38. The humane officer "deemed [the Dog] a neglect case, and [at the humane officer's request, Ms. Stefanic] brought him [from Gateway Humane Society] to Willow Run." *Id.* at 38. Ms. Stefanic stated that although the Dog's body had been shaved, his "head and face was a disaster. He was matted to the point of dread locks several inches long." *Id.* In addition to a "shade of green mostly on his head[, …] the crusting on his eyes was serious." *Id.* at 39. Ms. Stefanic continued to care for the Dog; at the time of trial, the Dog had been in the care of Willow Run for 168 days. *Id.* at 45, 49.

Jefferson County Humane Police Officer Debra McAndrew testified that a veterinarian had contacted her about the Dog. *Id.* at 62. According to Officer McAndrew, "once ownership of the [D]og was determined," she contacted Appellant. *Id.* at 62-63. Officer McAndrew stated:

> [Appellant] explained that the [D]og was difficult to groom, [and] that the [D]og needed to be anesthetized in order to be groomed. I [asked] who was her veterinarian, [and Appellant relayed it was] Brookville Animal Hospital – Clinic. I asked her who had groomed the [D]og previously. [Appellant] could offer no name of a groomer, no name of a grooming clinic. She could not tell me when she herself had attempted to groom the [D]og. At that point I explained to her that I would reach out to the vet clinic … and I thanked her.

*Id.* at 63.

Appellant gave Brookville Animal Clinic permission to speak with Officer McAndrew. *Id.* at 64. When Officer McAndrew called the clinic, they indicated the Dog had been seen most recently on July 31, 2020; the clinic also "sent

- 4 -

[Officer McAndrew] the entire dog's file." *Id.* Officer McAndrew testified that she "did not know the situation." *Id.* at 65. However, from the file she learned:

> The [D]og in 2020 had been sedated but the vet clinic did not do any type of shaving or grooming of the [D]og. They literally just sedated the [D]og.

*Id.* at 64.

Officer McAndrew also stated:

> Nothing in the [Dog's file] showed Cushing's [or other disease]. What I did find is throughout the years where the vet had noted that the [D]og was severely matted and needed grooming; feces were located at the [D]og's rectum. That[,] along with no current grooming within a couple of years is why I continued to keep the [D]og in protective custody and filed [the] charge of cruelty.

*Id.* at 65. On cross-examination, Officer McAndrew testified that she "chose to charge [Appellant with animal] cruelty based on the law." *Id.* at 69; *see also id.* at 70.

Appellant testified that the Dog was aggressive when she groomed him, and confirmed she had taken the Dog to Brookville Veterinarian Clinic on July 31, 2020, "with the idea of possibly putting [him] down." *Id.* at 83-84. Appellant stated that the Dog "couldn't stand, he wasn't eating," and Appellant "thought for sure he was dying." *Id.* at 88. She testified that the vet discovered the Dog had Cushing's disease. *Id.* at 89. According to Appellant, the Dog has pain and enlarged organs, but "there's not much you can do besides make sure that you keep [him] comfortable." *Id.* at 89, 91. The

Commonwealth asked Appellant: "What sort of treatment do you have to give [for the Dog's] Cushing's disease?" *Id.* at 89. Appellant answered: "Not picking him up ... making sure he's comfortable, just normal comfort[.]" *Id.*

Appellant further testified that she has three children who love and miss the Dog and want him back. *Id.* at 85; 95. Appellant said she "absolutely" loves the Dog. *Id.* at 88. She testified the family loves the Dog and never mistreated him; she introduced two photographs of the family and the Dog laying together and snuggling. *Id.* at 85-86; 93-94; Defendant's Exhibits C & D. Appellant stated that she painted the Dog green for St. Patrick's Day, but used "a nontoxic spray," and did not "think there was anything abus[ive] about that." *Id.* at 86. When viewing pictures of the Dog taken on April 7, 2022, Appellant opined that the Dog in the pictures "did not look like him," and "looks like he's been running around [and] got into stuff." *Id.* at 86; *see also* Commonwealth Exhibits 3 & 9. Appellant stated that when the Dog escaped, he would get into "garbage, mud, anything he can get into." *Id.* at 87. Appellant explained she tried "to groom him the best I can," and "little by little because he can only tolerate so much." *Id.* at 90.

Heidi Kunselman testified to being "pretty close" with Appellant. *Id.* at 71. Ms. Kunselman stated that she observed the Dog at Appellant's home "all the time," and never saw any evidence that the Dog was mistreated. *Id.* at 71-72. She also stated that Appellant's children had a "very good relationship" with the Dog. *Id.* at 72.

Maureen Selvy-Bolia testified to meeting Appellant on April 2, 2022, when Ms. Selvy-Bolia took her son for a sleepover at Appellant's home. *Id.* at 75, 78. Ms. Selvy-Bolia "did not believe the [D]og needed [to be seen by] a vet[erinarian]." *Id.* at 77. She described the Dog as "green on the bottom … and he was half groomed on the top, shaved down real close." *Id.* at 76. Ms. Selvy-Bolia explained the Dog was green "because St. Patty's Day was right before …." *Id.* According to Ms. Selvy-Bolia, Appellant relayed that she was "in the process of grooming him, that's why he's half like that, she does it in steps." *Id.* at 79.

## PROCEDURAL HISTORY

On April 13, 2022, the Commonwealth cited Appellant with animal cruelty in Magisterial District Court. The citation alleged Appellant "allowed one 1[7] year old terrier dog to become so severely matted that the [D]og had trouble walking, seeing[,] and there was foreign matter in the mats." Citation, 4/13/22. The Magisterial District Judge (MDJ) heard the case on June 9, 2022. The MDJ found Appellant guilty and ordered her to pay fines and costs of $946.58. Appellant filed an appeal with the Court of Common Pleas on June 16, 2022.

The trial court held a hearing *de novo* on September 26, 2022. Like the MDJ, the trial court found Appellant guilty of animal cruelty. The trial court ordered Appellant to forfeit the Dog to Willow Run, and pay costs of prosecution, a $200 fine, and restitution to Willow Run of $2,000. Appellant filed a post-sentence motion, which the trial court "accepted as a motion for

reconsideration." Order, 10/7/22. The trial court denied the motion, and Appellant timely filed a notice of appeal. Appellant and the trial court have complied with Pennsylvania Rule of Appellate Procedure 1925.

Appellant presents five issues for review:

1. WHETHER THE VERDICT IS SUPPORTED BY SUFFICIENT EVIDENCE?

2. WHETHER THE VERDICT IS AGAINST THE WEIGHT OF THE EVIDENCE?

3. WHETHER THE TRIAL COURT ERRED IN REFUSING TO DISMISS THE PROSECUTION AS DE MINIMUS?

4. WHETHER THE TRIAL COURT ABUSED ITS DISCRETION IN ORDERING FORFEITURE OF THE ANIMAL?

5. WHETHER THE CONVICTION SHOULD BE VACATED, AS 18 PA. C.S § 5533(A) IS UNCONSTITUTIONAL, AS THE STATUTE IS VAGUE, AND VIOLATES APPELLANT'S FUNDAMENTAL RIGHT TO REPUTATION?

Appellant's Brief at 5-6.

**ANALYSIS**

*1. Sufficiency*

Appellant argues the evidence was insufficient to support her conviction of animal cruelty, because "the crux of the complaint against [Appellant] is that she neglected to groom her dog. Even if accepted as true, evidence of neglect is insufficient as a matter of law to support a conviction of animal cruelty." Appellant's Brief at 20.

In considering Appellant's argument:

We must determine whether the evidence is sufficient to prove every element of the crime beyond a reasonable doubt. We must view evidence in the light most favorable to the Commonwealth as the verdict winner, and accept as true all evidence and all reasonable inferences therefrom upon which, if believed, the fact finder properly could have based its verdict.

*Commonwealth v. McFadden*, 156 A.3d 299, 303 (Pa. Super. 2017) (citation omitted).

The Crimes Code provides that a person is guilty of animal cruelty "if the person intentionally, knowingly or recklessly illtreats, overloads, beats, abandons or abuses an animal." 18 Pa.C.S.A. § 5533(a). Appellant disputes the trial court's conclusion that Appellant recklessly illtreated the Dog. Appellant's Brief at 20-21. Appellant claims the evidence does not support a finding that Appellant treated the Dog "cruelly or improperly." *Id.* at 21 (citing "Merriam-Webster's Online Dictionary."). Appellant essentially argues she was charged under the wrong statute. The General Assembly enacted two offenses: neglect of an animal (18 Pa.C.S.A. § 5532), and cruelty to an animal (18 Pa.C.S.A. § 5533). According to Appellant, the creation of separate offenses shows the General Assembly's intent to distinguish actions and inactions. *Id.* at 19. Appellant contends "affirmative actions" are required under the cruelty to animal statute, and mere negligence cannot constitute cruelty. *Id.* at 21. She maintains that the allegations against her constitute mere negligence, and therefore, as a matter of law, the Commonwealth failed to establish her cruelty to the Dog. Appellant also maintains the evidence was

too unreliable and/or contradictory to support a finding that she was guilty beyond a reasonable doubt. *Id.* at 22. Citing particular findings, Appellant argues that either there was no evidence of a particular fact, or the evidence was contradictory.

Appellant's first sufficiency argument fails because the plain language of the cruelty to animal statute prohibits "illtreatment." Appellant concedes that the "verb 'ill-treat' is to treat cruelly or improperly." Appellant's Brief at 21 (citing Merriam-Webster's Online Dictionary). The trial court's findings align with the ordinary usage of the word "illtreat," because the evidence was sufficient to establish that Appellant treated the dog "cruelly or improperly." Notably, the General Assembly has abrogated the rule that where two statutes apply, the Commonwealth may only prosecute under the more specific statute. *See* 42 Pa.C.S.A. § 9303 (providing, "Notwithstanding the provisions of 1 Pa.C.S. § 1933 (relating to particular controls general) or any other statute to the contrary, where the same conduct of a defendant violates more than one criminal statute, the defendant may be prosecuted under all available statutory criminal provisions without regard to the generality or specificity of the statutes.").

In her second sufficiency argument, Appellant claims the evidence was too unreliable or contradictory to support a guilty verdict. Appellant's Brief at 22. Appellant appears to be arguing the rule that "[a]ny doubt about the defendant's guilt is to be resolved by the fact finder unless the evidence is so

weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances." ***Commonwealth v. Sebolka***, 205 A.3d 329, 336-37 (Pa. Super. 2019). Here, any inconsistencies in the evidence did not preclude the establishment of facts regarding animal cruelty, and the trial court, as factfinder, was capable of reconciling any inconsistencies.

After hearing the evidence, the trial court stated:

[I]n reviewing the pictures … [the Dog] has a lot of spruce twigs in his fur. … [There is] clearly a piece of metal that's imbedded in the [D]og's fur and it would take some period of time to get in there. … [H]is hair was too long and it was matted. That takes some time. Now the [D]og was old [and he] may have had some pain, but that doesn't excuse [Appellant] as a dog owner. I think leaving its hair that long amounts to knowingly and recklessly ill treatment or abuse as it turned out. …

N.T., 9/26/22, at 99-100.

The trial court further opined:

[T]he statute under which [Appellant] was prosecuted makes it an offense merely to "illtreat" an animal either intentionally, knowingly, or recklessly. 18 Pa.C.S.A. § 5533(a)[. T]he credible evidence shows [Appellant] did exactly that. She was advised on December 19, 2021 that her dog needed grooming. ***See*** Hearing Transcript, 09/26/2022, p. 33. Yet it was not until early April of the following year that she even attempted to begin that process.[1] By then, his fur was so long and matted from time and untreated eye secretions that he could not walk properly, *i.e.*, he waddled, ***see id.*** at 7 & 21, and had trouble navigating because he could not see the objects in front of him. ***See id.*** at 43-44. His condition was not the result of a singular escape on April 7, 2022, either; as one knowledgeable witness testified, matting so severe, wherein foreign objects had become deeply entangled in the [D]og's fur, did not happen within just a couple of days. ***Id.*** at 23-27. All of those—the matted fur, the wood and metal fragments, the eye secretions, and even the waddle—were clearly

- 11 -

visible to the naked eye, and [Appellant], in choosing to ignore it, subjected her dog to ill treatment.[2]

[1] Given [Appellant's] own testimony about how difficult it was to groom the [D]og and her representation to the Animal Clinic that he needed to be sedated first, the [c]ourt did not believe that she had groomed him "multiple times" between December 19, 2021 and April 7, 2022. *See id.* at 82.

[2] By the time a third party had to deal with the effects of [Appellant's] actions, the grooming process visibly caused the dog pain.

Trial Court Opinion, 11/21/22, at 1 (footnotes in original).

The record supports the trial court's conclusion that the evidence was sufficient to prove animal cruelty beyond a reasonable doubt. As an appellate court, we may not weigh the evidence and substitute our judgment for the fact-finder. *See Commonwealth v. Hummel*, 283 A.3d 839, 846 (Pa. Super. 2022). Consequently, Appellant's sufficiency argument does not merit relief.

*2. Weight*

Appellant also argues the verdict was against the weight of the evidence. Appellant's Brief at 25-29. Appellant asserts that her "version of the events is simply more credible and worthy of belief." *Id.* at 26.

Again, Appellant disregards that "[i]t is not for this Court to overturn the credibility determinations of the fact-finder[.]" *Commonwealth v. Blackham*, 909 A.2d 315, 320 (Pa. Super. 2006). In addition:

Appellate review of a weight claim is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence. Because the trial judge has

- 12 -

had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence. One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice.

*Commonwealth v. Landis*, 277 A.3d 1172, 1183–84 (Pa. Super. 2022) (citations omitted). To prevail on a challenge to the weight of the evidence, "the evidence must be so tenuous, vague and uncertain that the verdict shocks the conscience of the court." *Commonwealth v. Talbert*, 129 A.3d 536, 546 (Pa. Super. 2015) (citation omitted).

The trial court did not find the verdict to be shocking. We repeat that it is not our role to weigh evidence and substitute our judgment for the fact-finder. *Hummel*, 283 A.3d at 846. Appellant's argument regarding her credibility is unavailing, and there is no record or legal support for her weight claim.

*3. De minimis infractions*

Appellant next argues that the trial court erred in refusing to "dismiss the [animal cruelty] charge as *de minimis*." Appellant's Brief at 32. The trial court concluded Appellant waived this issue because she did not raise it "until a verdict had already been entered against her." Trial Court Opinion, 11/21/22, at 2. Appellant claims she preserved the issue by raising it in her motion for reconsideration and concise statement of matters complained of on

appeal. Appellant's Brief at 30 n.7. Like the trial court, the Commonwealth contends Appellant waived the issue, and emphasizes Appellant did not assert the *de minimis* nature of the case "before, or during the summary trial." Commonwealth Brief at 15.[1] In addition, the Commonwealth "wholly disagrees with Appellant's contention that [her] conduct was *de minimis* in nature." **Id.**

Our standard in reviewing this claim is whether the trial court committed an abuse of discretion. **Commonwealth v. Lutes**, 793 A.2d 949, 963 (Pa. Super. 2002) (citation omitted). The Crimes Code provides:

### § 312. *De minimis* infractions

**(a)** **General rule.--**The court shall dismiss a prosecution if, having regard to the nature of the conduct charged to constitute an offense and the nature of the attendant circumstances, it finds that the conduct of the defendant:

(1) was within a customary license or tolerance, neither expressly negatived by the person whose interest was infringed nor inconsistent with the purpose of the law defining the offense;

(2) did not actually cause or threaten the harm or evil sought to be prevented by the law defining the offense or did so only to an extent too trivial to warrant the condemnation of conviction; or

(3) presents such other extenuations that it cannot reasonably be regarded as envisaged by the General Assembly or other authority in forbidding the offense.

---

[1] Appellant does not address waiver in her reply brief.

- 14 -

18 Pa.C.S.A. § 312(a).

This Court has explained:

[N]either the statute nor case law requires a defendant to preserve the issue of *de minimus* infractions by means of inclusion in an omnibus motion. On the contrary, the language of the statute requires the trial court to dismiss the prosecution on its own accord, upon a determination that the defendant's conduct involved *de minimus* infractions.

***Commonwealth. v. Gemelli***, 474 A.2d 294, 300 (Pa. Super. 1984).

Pursuant to ***Gemelli***, Appellant was not required to preserve this issue prior to the hearing. ***Gemelli***, 474 A.2d at 300. It is the trial court's responsibility to determine *de minimis* infractions. ***Id.*** Appellant asserts her "alleged conduct satisfies all three prongs of the *de minimis* statute." Appellant's Brief at 31 (citing 18 Pa.C.S.A. § 312(a)). However, the trial court did not view Appellant's infractions as *de minimis*. To the contrary, the trial court was unequivocal in its view of the charged conduct. ***See*** Trial Court Opinion, 11/21/22, at 1-2. Thus, this issue does not merit relief.

*4. Forfeiture*

Appellant argues the trial court erred by ordering her to forfeit the Dog, and "justice demands the [D]og be returned to [Appellant]." Appellant's Brief at 33. Nonetheless, Appellant acknowledges the trial court had authority to "order the forfeiture or surrender of an abused or neglected animal" pursuant

to 18 Pa.C.S.A. § 5554(a).[2]  ***Id.*** at 32.  Appellant also concedes that forfeiture

"is within the discretion of the sentencing court."  ***Id.***

> Here, the trial court explained:

> As the evidence plainly indicated, [Appellant's] offense was not a one-time event.  The [D]og's condition was the result of an extended pattern of neglect, and in light of that history and [Appellant's] rather preposterous testimony, the [c]ourt had no reason to expect that the animal would fare any better in the future if returned to her care.

Trial Court Opinion, 11/21/22, at 1-2.

The record and law support the court's order directing Appellant's

forfeiture of the Dog to Willow Run.  As such, the trial court did not abuse its

discretion, and the issue does not warrant relief.

*5. Constitutionality*

Lastly, Appellant claims the animal cruelty statute is unconstitutional.

The trial court concluded Appellant waived this issue because she failed to

raise it "until a verdict had already been entered against her."  Trial Court

Opinion, 11/21/22, at 2.  Likewise, the Commonwealth states:

> At no time before or during proceeding[s] and trial did Appellant raise[] either claim.  It was only after the verdict was rendered [that] these two claims arose.  Appellant's failure to enter a timely objection result[s] in waiver of these claims.

---

[2] The statute states that "in addition to any other penalty provided by law, the authority imposing sentence upon a conviction for a violation of [cruelty to animals] may order the forfeiture or surrender of an abused or neglected animal of the defendant to a society or association for the prevention of cruelty to animals duly incorporated under the laws of this Commonwealth."  18 Pa.C.S.A. § 5554(a).

Commonwealth Brief at 6.

Appellant claims she preserved her constitutionality issue by raising it in her motion for reconsideration and concise statement of matters complained of on appeal. Appellant's Brief at 33 n.9. She asserts the animal cruelty statute is unconstitutionally vague because there "is ambiguity in the phrase, 'illtreats ... an animal,' [and t]he word 'illtreats' is not defined in the statute." *Id.* at 35. Appellant states that she was "accused of failing to properly groom her dog[, and t]he language of the statute does not put an ordinary person on notice that a failure to groom a dog would constitute a violation of section 5533(a)." *Id.* In addition, Appellant asserts her "reputation [has been] harmed for no legitimate and/or necessary purpose," resulting in "the deprivation of her right to reputation." *Id.* at 35-36.

"Generally speaking, issues not properly raised and preserved before the trial court are waived and cannot be raised for the first time on appeal." *Commonwealth v. Thorne*, 276 A.3d 1192, 1196 (Pa. 2022) (citations omitted) (reiterating that an appellant waives any claim that is not properly raised in the first instance before the trial court and preserved at every stage of an appeal.)). In addition, "a new and different theory of relief may not be successfully advanced for the first time on appeal." *Commonwealth v. Pi Delta Psi, Inc.*, 211 A.3d 875, 884 (Pa. Super. 2019).

We further observe: "When an appellant's argument is underdeveloped, we may not supply it with a better one." *Id.* Appellant's constitutionality

argument is underdeveloped.  **See** Appellant's Brief at 33-36.  Appellant cites

boilerplate case law to support her conclusory claims.  **Id.**  The Pennsylvania

Supreme Court recently found waiver where an appellant

> submits only "generalized assertions[,] ... not arguments, much less reasoned and developed arguments supported with citations to relevant legal authority."  **Spotz**, 18 A.3d [244,] 326 [(Pa. 2011)]; **see also id.** at 262 n.9 (finding equal protection claim unreviewable and waived for lack of development).  This type of mere issue spotting without sufficient analysis or legal support precludes appellate review.  **See In re Beach's Estate**, 324 Pa. 142, 188 A. 108, 108 (1936) (*per curiam*) (an "appellant must not only specifically assign as error any rulings complained of, but, further, must point out wherein the error lies and reasons therefor, or they will be deemed to have been waived").

**Commonwealth v. Armolt**, No. 86 MAP 2021 at *12 (Pa. May 16, 2023).

Appellant references the rule governing constitutional vagueness claims,

but does not reference the corresponding standard for constitutional

reputation claims.  She also fails to explain the way in which she believes the

respective constitutional rights regarding vagueness and reputation were

violated.  Accordingly, Appellant has waived her issue challenging the statute's

constitutionality.

Even if we assume for the sake of argument that Appellant properly

preserved and developed her constitutionality issue, she would not be entitled

to relief.  The Pennsylvania Supreme Court has instructed:

> A statute is presumed constitutional and will not be declared unconstitutional unless it "clearly, palpably and plainly" violates the Constitution.  All doubts are therefore to be resolved in favor of a finding of constitutionality.  A statute will only be found to be void for vagueness if it fails to define unlawful conduct with

- 18 -

sufficient definiteness so that ordinary people understand what conduct is prohibited. At the same time, a statute will only be deemed to be overbroad if it punishes a substantial amount of constitutionally protected conduct.

*Commonwealth v. Craven*, 817 A.2d 451, 454 (Pa. 2003) (citations omitted).

Here, the prosecutor began her closing argument by correctly observing:

> To recklessly illtreat an animal, it's by an act or omission to act, Your Honor. I've looked this particular statute up and there's all kinds of case law that ranges from dairy farm neglect, abandoned dogs, someone piercing a kitten's ears, not proper shelter. It's just a myriad of things that the Courts have determined is animal cruelty.

N.T., 9/26/22, at 98.

The Pennsylvania Supreme Court and this Court have rejected challenges to the constitutionality of the animal cruelty statute (and its predecessor statutes). For example, where an appellant challenged the predecessor animal cruelty statute pertaining to animal fighting, 18 Pa.C.S.A. 5511(h), as overbroad and vague, this Court stated that "one may not successfully challenge a statute for vagueness when his conduct clearly falls within the prohibited acts set forth therein." *Commonwealth v. Balog*, 672 A.2d 319, 322 (Pa. Super. 1996) (citations omitted). *See also Craven*, 817 A.2d at 452 (concluding subsection of animal cruelty statute making animal fighting a felony "is constitutionally sound"); *Commonwealth v. Barnes*,

629 A.2d 123, 129 (Pa. Super. 1993) (concluding animal cruelty statute was "not unconstitutionally vague, …[a]lthough [a] term … [wa]s not defined").

Appellant claims she was convicted of animal cruelty because she "failed to groom her dog," and asserts that the "label" of animal cruelty "should be reserved for those who actually commit acts of cruelty against animals." Appellant's Brief at 35. Appellant's assertion regarding "those who actually commit acts of cruelty against animals," disregards the statute and trial court's guilty verdict. Consequently, no relief is due.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 7/25/2023